# Rahm's Estate.

*Judgment — Collateral attack — Nonresponsive pleadings — Orphans' court.*

1. A judgment is void and may be attacked collaterally where it is not responsive to the issues tendered by the pleadings; but where the record is amended, or considered as amended by the parties so as to include other issues than those presented by the original pleadings, the court may determine the issues thus raised. In such case if the matter in controversy is litigated and the complaining party has been present or has been given an opportunity to be heard, the court has jurisdiction and a judgment is valid.

2. The above rule applies to a decree of the orphans' court in an audit of a deceased trustee's estate awarding to the substituted trustee the corpus of the trust funds, and further directing that the future income should be paid, not to the cestui que trust as the will directed, but to the estate of the deceased trustee under an equitable assignment, where it appears that the claimant cestui que trust secured two continuances of the audit, that he admitted to the accountant that he had a claim against the estate, that he was personally in court at the audit, and that he was notified by the court through his counsel that the right to the income of the trust fund would be adjudicated.

Argued Nov. 2, 1909. Appeal, No. 197, Oct. T., 1909, by Edward Rahm, Jr., from decree of O. C. Allegheny Co., Oct. T., 1908, No. 139, dismissing petition to declare void a previous decree of the court in the Estate of Edward Rahm, Sr., deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition to declare void a previous decree of the orphans' court and to enjoin payments thereunder. Before MILLER, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the petition.

*Henry A. Davis*, with him *Wallace & Watson*, for appellant.—A court may set aside its own void decree and is bound to do so when, in any proceeding, the attention of the court is called to the fact that it had no jurisdiction to enter the decree in question: Phila. v. Jenkins, 162 Pa. 451.

The decree is void because the court had no jurisdiction over the subject-matter nor over the person of petitioner: Wall v. Wall, 123 Pa. 545.

The court had no jurisdiction over the subject-matter because the only issue before the court at the audit in the Hopkins estate was the distribution of the assets in the hands of the ancillary administrator: Munday v. Vail, 34 N. J. L. 418; Spoors v. Coen, 44 Ohio, 497; White's Est., 2 W. N. C. 383.

*Jesse T. Lazear*, with him *H. V. Blaxter*, for appellee.— Where the share of one who is apparently entitled is claimed by another, such claim must be established in the proceedings for distribution, as it must be there established, so it may be there impugned: McGettrick's App., 98 Pa. 9; Bridaham's App., 1 Pennypacker, 262; Moore's Est., 211 Pa. 338; Woodward's App., 38 Pa. 322.

Having notice of the proceedings, the appellant cannot come in later to have the same reviewed: Johnston's App., 4 W. N. C. 80; Otterson v. Middleton, 102 Pa. 78; App v. Dreisbach, 2 Rawle, 287; Yocum v. Commercial Bank, 195 Pa. 411.

Appellant was a party to the proceedings: Alexander's Est., 214 Pa. 369.

The appellant had the legal right to release or assign his interest in his father's estate, and such assignment will be protected in equity: Power's App., 63 Pa. 443; East Lewisburg Lumber, etc., Co. v. Marsh, 91 Pa. 96; Jackson's Est., 203 Pa. 33; Moss v. Cohen, 158 N. Y. 240 (53 N. E. Repr. 8).

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

The Fidelity Title & Trust Company filed its first and final account as ancillary administrator of the estate of James H. Hopkins, deceased, at No. 68, October Term, 1905, of the orphans' court of Allegheny county. The account came before the court for audit on October 17, 1905, and at the instance of counsel representing Edward Rahm, Jr., distribution was suspended for two weeks. On December 5, 1905, Rahm presented a petition to the court asking the distribution to be further postponed until after the hearing in the estate of Virginia Rahm, deceased, to which, he averred, that James H. Hopkins was largely indebted. The audit was postponed until January, 1908, when the hearing was resumed.

On January 20, 1908, the orphans' court entered a decree of distribution in the Hopkins estate awarding the balance for distribution in the hands of the ancillary administrator to the domiciliary administrator at Washington, D. C. On January 22, 1908, the Guarantee Title & Trust Company, administrator d. b. n. c. t. a. of the estate of Edward Rahm, deceased, presented its petition to the court, averring, inter alia, that its decedent had devised to his sister, Louisa Rahm, the interest on $3,000 during her lifetime; and directed that when his son, Edward Rahm, should reach the age of twenty-eight years, all of his share of the testator's estate should be paid over to him except the sum of $20,000, which sum should be held by the executors for the heirs of Edward at his death, the interest derived from said sum to be paid to Edward by the executor semiannually during his life. It was further averred in the petition that James H. Hopkins was the executor of the will of Edward Rahm, deceased, that he had died June 17, 1904, a resident of the city of Washington, D. C., and that his administrator was the National Safe Deposit, Savings & Trust Company of Washington, and the Fidelity Title & Trust Company of Pittsburg was the ancillary administrator; that the account of the ancillary administrator had been filed showing a balance for distribution which was claimed by the domiciliary administrator. It was further averred that Hopkins' ancillary administrator had not charged itself in the account

filed with the $20,000 and $3,000, trust funds, nor the income accrued thereon and not paid to the beneficiaries under the will. The petition prayed that the ancillary administrator be required to file a supplemental account showing the administration of the trust funds, and that the funds shown to be in its hands be paid to the petitioner. A citation was awarded as prayed for. An answer was filed by the Fidelity Title & Trust Company, the ancillary administrator of James H. Hopkins, deceased, in which, inter alia, it was denied that the administrator of the estate of Edward Rahm, deceased, was entitled to the trust funds named in the petition, either principal or interest; and it was averred "that the most that could be required of the respondent would be that security should be given for the payment of the $20,000 upon the death of Edward Rahm to those persons who would then be his heirs, and for the payment of interest upon the $3,000 during the life of Louisa Rahm, and that respondent should not be liable for any interest upon the said $20,000 during the life of the said Edward Rahm, nor at any time liable for the payment of any portion of the $3,000 from which Louisa Rahm is entitled to the interest."

The citation was heard upon petition, answer and testimony. A supplemental account was filed, and on May 22, 1908, the court entered a decree of distribution in the audit awarding to the Guarantee Title & Trust Company, administrator and trustee of Edward Rahm, deceased, the $20,000, and directed the income thereof during the life of Edward Rahm, Jr., to be paid to the ancillary administrator of the estate of James H. Hopkins, deceased, and the principal at the death of Edward Rahm, Jr., to be paid to his heirs as directed in the will; and awarded to Rahm's administrator and trustee the $3,000, and directed the income thereof to be paid to Louisa Rahm during her life, and at her death the principal be paid to the legal representatives of the estate of James H. Hopkins, deceased.

Edward Rahm, Jr., presented his petition to the orphans' court, October 13, 1908, reciting, inter alia, the fact of the bequests of the $20,000 and $3,000, averred that the court was without jurisdiction to adjudicate the disposition of the fu-

ture income arising upon said trust funds and the disposition of the $3,000 after the death of Louisa Rahm, and prayed for a rule on the trustee of the will of Edward Rahm, deceased, and on the ancillary administrator of the estate of James H. Hopkins, deceased, to show cause why the provisions of the decree directing the payment of the income arising from the fund of $20,000 during the life of Edward Rahm to the said ancillary administrator, and the payment of the principal of the $3,000 after the death of Louisa Rahm to the ancillary administrator should not be declared void and of no effect. A citation was awarded to which the ancillary administrator filed an answer which set forth at length the reasons for sustaining the decree and why the court should refuse to declare it void. Accompanying the answers were copies of two releases given to James H. Hopkins, one signed by Edward Rahm on April 9, 1890, and the other, on January 12, 1900, by which Rahm acknowledged a full and satisfactory settlement with Hopkins, the executor of his father's estate, and that he had received the full amount coming to him from the estate; also admitting that the executor had paid over to him the amounts directed by the will to be given to Rahm's heirs on condition that Rahm would indemnify him for so doing, and therein agreed to indemnify Hopkins against any and all liability to any person or persons by reason of said payment.

On May 4, 1909, the court entered a decree dismissing Rahm's petition, and from that decree he has taken this appeal.

The appellant contends the court erred in holding that it had jurisdiction, in the audit in the Hopkins estate, to adjudicate questions relating to the payment of the future income, and disposition of the principal, of the trust funds belonging to the estate of Edward Rahm, Sr., deceased; and in holding that it had jurisdiction to dispose of the income, not accrued and presently in court for distribution, but to be derived in the future from trust funds in the hands of the substituted trustee.

We fully concur with the contention of the learned counsel for the appellant that a judgment is void and may be attacked

collaterally where it is not responsive to the issues tendered by the pleadings. That doctrine is sustained by both American and English authorities. The issues to be tried before the court in any proceeding are those made up by the pleadings and disclosed by the record, and the judgment thereon is only upon those issues. It is equally true, however, that where the record is amended, or considered as amended by the parties, so as to include other issues than those presented by the original pleadings, the court may determine the issues thus raised. In such case, if the matter in controversy is litigated and the complaining party has been present or has been given an opportunity to be heard, the court has jurisdiction and the judgment is valid: Reynolds v. Stockton, 140 U. S. 254. In delivering the opinion in this case, Mr. Justice BREWER said: "Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not, in fact, put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial and actually litigated that matter. In such a case, the proposition so often affirmed, that that is to be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made. Here there was no appearance after the filing of the answer, and no participation in the trial or other proceedings."

In his opinion the learned judge of the orphans' court says: "This petitioner was in court during the hearings in the audit of the Hopkins estate. His petition is of record December 7, 1905, asking for postponement of distribution, and the same counsel who represents him now represented all the interests then, and were repeatedly notified by the court that the question of income on the Rahm claim would be determined in the Hopkins audit."

It will be observed that the question of the right to the trust funds and the interest thereon was distinctly raised in the answer filed by the ancillary administrator of James H. Hopkins, deceased, to the petition of Edward Rahm's administrator. The answer denied the right of Edward Rahm to the in-

come on the $20,000 and his right to the corpus of the $3,000 at the death of Louisa Rahm. The pleadings therefore presented the question for consideration in the distribution of the Hopkins estate, and there can be no doubt that it was clearly within the jurisdiction of the orphans' court to determine the question. Rahm's substituted trustee claimed that under Rahm's will the trust funds should be paid to it, the corpus as well as the income to be distributed by it. Hopkins's administrator denied the right of the trustee to collect the income on the $20,000 and make application of it, or to pay the $3,000 to Edward Rahm after the death of the life legatee. In the decree, the orphans' court passed upon that question which was clearly before it and within its jurisdiction. If it was erroneously decided against Edward Rahm, Jr., or against the trustee of Edward Rahm, Sr., the remedy was by an appeal to this court.

The fund for distribution was in the hands of the administrator of Hopkins, who had been the original trustee under Rahm's will. This is not an appeal by the substituted trustee, but by Edward Rahm, Jr., who claims that the money in the hands of Hopkins's administrator belonging to Rahm's estate should have been paid to the substituted trustee. This is a contest, therefore, between Edward Rahm, Jr., the legatee under his father's will, and the ancillary administrator of James H. Hopkins, deceased, for the legacy in question. The court awarded to the substituted trustee the corpus of the trust funds, but directed that the income from the $20,000 and the remainder after the life estate in the $3,000, the legacy bequeathed to Edward Rahm, Jr., should be paid to Hopkins's administrator. It appears that by mistake Hopkins paid to Edward Rahm, Jr., the $20,000. He took the releases, above referred to, which acknowledged the receipt by Edward Rahm, Jr., of the amounts directed to be paid him by the will of his father, released Hopkins from all other liability or accountability to him on account of the estate, and agreed to indemnify Hopkins against liability by reason of the payment. This must be treated as an equitable assignment of Rahm's interest in his father's estate to Hopkins. The latter cannot retain the

$20,000 against the heirs of Edward Rahm, Jr., but he is clearly entitled to the income on the $20,000 and the corpus of the $3,000 after the life estate of Louisa Rahm therein. Edward Rahm, Sr., left two sons who would have inherited the $3,000, as he died intestate as to the remainder of that fund, but the other son having died, the entire fund would go to Edward, Jr. Having received from Hopkins, as trustee, $20,000 of his father's estate, which he was not entitled to, and for which Hopkins was responsible, it is but equitable and just that Edward Rahm, Jr., should be compelled to refund the money to the extent that Hopkins's administrator has funds in his hands belonging to Edward. The orphans' court is a court of equity and it clearly has the right to enforce the repayment of the $20,000 to Hopkins so far as the funds for distribution will permit.

As found by the orphans' court, Edward Rahm, Jr., had full knowledge of the audit of the Hopkins account. He appeared by counsel in 1905 and obtained a postponement of the audit proceedings. Subsequently, on his petition, a further postponement was had in the audit for more than two years. He intimated to the accountant that he had a claim against the estate. He was personally present in court at the audit, as admitted by counsel. The court notified his counsel that the right to the income of the trust fund would be adjudicated.

It is therefore clear, we think, that Edward Rahm, Jr., had notice of the audit, was present during at least a part of it, and knew that the fund, which he now claims, was a subject-matter in controversy, raised by the pleadings, and would be determined by the court. He therefore had an opportunity to be heard and is bound by the decree: Johnston's App., 4 W. N. C. 80.

The assignments of error are overruled and the decree is affirmed.