## Kellerman's Estate.

*Res adjudicata—Orphans' court—Construction of will on partial distribution.*

1. A particular construction of a will on a partial distribution by an auditing judge of the orphans' court to which no exceptions were filed, and from which no appeal was taken, is not res adjudicata so as to bind the orphans' court on the subsequent adjudication of an account covering another portion of the same estate.

*Trusts and trustees—Separate use trust—Rule in Shelley's case.*

2. Testator gave a portion of his estate to trustees to keep the same invested and to pay over the income thereof to his granddaughter, a married woman, "for and during all the term of her natural life for her sole and separate use, and from and immediately after her decease then in trust to and for the only proper use and behoof of all and every the child and children which she may leave surviving her, and the lawful issue of any of them who may be then deceased having left such issue, their several and respective heirs, executors and assigns in equal shares forever per stirpes, and not per capita." *Held* (1) that the words "child and children which she may leave surviving her and the lawful issue of them who may be then deceased," are words of purchase and not of limitation; and (2) that the trust did not cease upon the death of the husband leaving a child surviving but continued until the death of the wife.

Argued Oct. 18, 1912. Appeal, No. 144, Oct. T., 1912, by Bertha Crowley, from decree of O. C. Phila. Co., April Term, 1911, No. 356, dismissing exceptions to adjudication in Estate of Caroline Kellerman, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

LAMORELLE, J., filed the adjudication which was in part as follows:

The sole question for decision is whether the trust for a grandchild, Bertha Crowley, has terminated.

Testatrix directed that her residuary estate, real, personal and mixed, should be divided into three equal parts, and one of those thirds she directed should be subdivided into four shares. As to one of them, i. e., one-twelfth of her estate, she provided as follows: "One other fourth part of my said estate, I give, bequeath and devise to my executors in trust for the following uses, and purposes, that is, to keep the same invested and to pay over the income thereof to my granddaughter, Bertha Crowley, wife of John C. Crowley, for and during all the term of her natural life for her sole and separate use, and from and

Adjudication.　　　　[52 Pa. Superior Ct.

immediately after her decease then in trust to and for the only proper use and behoof of all and every the child and children which she may leave surviving her, and the lawful issue of any of them who may be then deceased having left such issue, their several and respective heirs, executors, administrators and assigns, in equal shares forever per stirpes and not per capita."

Bertha Crowley's husband is deceased, and by the adjudication of the former account one-twelfth of the balance then in the hands of the accountants, consisting entirely of personal property, was awarded directly to Bertha Crowley, upon the theory that, as the separate use trust had become ineffective and the remainder being, in effect, to the heirs of her body, by analogy the rule in Shelley's case applied. It is now contended that such interpretation of the will has become the law of the case, upon the authority of Lafferty's Estate, 230 Pa. 496, and that, even if that case does not govern, the authorities justify terminating the trust.

The auditing judge cannot acquiesce in either of those claims. Prior to the decision in Lafferty's Estate, supra, it was undoubtedly the practice in this court that no auditing judge was bound by any previous ruling or interpretation—even his own—where there was another and a definite fund for distribution. Whether, therefore, the effect of this case is to give to the ruling of an auditing judge the same effect as is given to the judgment of a court, is a matter for the determination of this court, and until such decision, the former practice should prevail. On the merits of the contention, the auditing judge is of opinion that the words "child and children which she may leave surviving her and the lawful issue of them who may then be deceased," are words of purchase and not of limitation; that, although one of the purposes of the trust has ceased by the death of Bertha Crowley's husband, the other has not, that is the preservation and conservation of the corpus for the benefit of those entitled in remainder. Until the death of the equitable life tenant, it cannot be determined

who will compose the class, consisting of surviving children and the issue of those then deceased.

In Harrison's Estate, 227 Pa. 134, it was sought to set aside the provisions of a separate use trust, the cestui que trust being a widow. The will provided that on the death of the daughter (the equitable life tenant) her share should pass to her children and if she have "no issue" surviving, the share should pass to her brothers or sisters. It was held, affirming the decree of this court, that until the death of the cestui que trust, it was impossible to tell who was entitled, and the trust was held as valid and subsisting. In Boyd's Estate (No. 1), 199 Pa. 487, an estate was given in trust for Mary Bray for life, with sole and separate use clause, power of appointment and limitation over to her heirs, in event of her failure to exercise this power. The auditing judge held that Mary Bray took in fee in that she was not married and not contemplating—except, possibly, in the general as distinguished from the legal way—marriage at the time of the execution of the will. Judge PENROSE, in sustaining the exceptions, decided that the trust continued, that the daughter had already a life estate; he directed distribution, upon her decease, to her "heirs." His decree and opinion were adopted by the Supreme Court.

In view of these authorities further discussion and citations appear unnecessary. The rule in Shelley's case does not apply; the equitable and legal estates do not coalesce. That testatrix intended the trust as well for the protecting of the children of her daughter as for the daughter herself, is shown by that other clause of the same will, wherein one-twelfth of the estate is given to the executors in trust to keep the same invested and to pay over any income to a grandson, John J. Kellerman, for his life, and after his death, for his child or children and the issue of any then deceased. In the creation of both trusts, the provisions were not intended to be meaningless; the corpus was held for the second takers, and the first taker was the object of testatrix' bounty as to income only.

In Lewis's Estate, 18 Pa. Dist. Rep. 983, the estate was directed to be held in trust for the widow for life and upon her death to divide into four equal parts, paying one to each of the four children if living and if dead to their issue. Three of the children were deceased, without issue, and the surviving child and widow sought to terminate the trust. The prayer of the petition was refused in that as the surviving child had issue, it was impossible to tell who might become entitled to the corpus upon the death of the cestui que trust.

Gest, J., filed the following opinion on the exceptions:

The testatrix by her will devised and bequeathed a twelfth part of her residuary estate to her executors in trust to pay over the income to her granddaughter Bertha, wife of John C. Crowley "for and during the term of her natural life for her sole and separate use and from and immediately after her decease then in trust to and for the only proper use and behoof of all and every child or children which she may leave surviving her and the lawful issue of any of them who may be then deceased for life having left such issue, their several and respective heirs, executors, administrators and assigns in equal shares forever per stirpes and not per capita."

John C. Crowley, the husband of the cestui que trust, died before the testatrix, leaving one child by his wife Bertha. Both the wife and child are still living, and upon the audit of the first account of the executors, the auditing judge, Anderson, J., filed an adjudication in which he held that by reason of the discoverture of the cestui que trust, the separate use trust ended, or rather never came into effect; that her estate was a legal estate, and that the remainder, being practically to the heirs of her body, the entire fund vested in her absolutely and it was so awarded. No exceptions were filed to this adjudication and the schedule of distribution was approved and filed on July 24, 1911, so that, under the rule of court, the adjudication was confirmed absolutely.

Subsequently, the executors filed their second account embracing the proceeds of the sale of real estate, converted under the power of sale in the will, and the same question was raised before the auditing judge, LAMORELLE, J. In his adjudication the auditing judge held that he was not bound by the prior adjudication upon the first account, inasmuch as it disposed of a different fund, and ruled that the trust for Bertha Crowley continued notwithstanding her discoverture, and, accordingly, her share was awarded to the executors in trust under the terms of the will.

These exceptions filed in behalf of Bertha Crowley raise two questions, the first of which is whether the construction of the will adopted by ANDERSON, J., in his adjudication upon the first account became the law of the case and binding upon the present auditing judge in his audit of the second account.

The Act of May 19, 1874, P. L. 206, sec. 3, Stew. Purd. 3360, establishing a separate orphans' court in Philadelphia county, provides for three judges learned in the law "either of whom may hold the said court." The auditing judge therefore acts for the court in the adjudication of an account, and his award made therein becomes, if no exceptions are filed, the final decree of the court, so that the matter is res adjudicata. But it has always been supposed that when the same question of law subsequently arose as to the distribution of another fund, the first decision of the court was not binding, and that another auditing judge, or the same judge, upon further consideration, and a fortiori the court in banc, after the argument of exceptions filed, had the right to correct errors committed in the former decree and to adopt another construction of the will. Such a course was adopted by the court and sustained on appeal in Guenther's Appeal, 4 W. N. C. 41; Kline's App., 86 Pa. 363; Grim's App., 109 Pa. 391, and Lease v. Ensminger, 5 Pa. Superior Ct. 329. It is easy to see the injustice that might readily result from the contrary doctrine. It frequently happens that questions of law are imperfectly presented to the auditing

judge and decided without proper argument, or the facts of the case are not fully developed, and where no exceptions are filed either because counsel themselves do not realize the importance of the decision, or the amount involved does not warrant the expense of litigation, or for some other sufficient reason it would be a serious matter to hold that an error of law once committed could never be corrected in the future distribution of another and distinct fund, but remain unchangeable like the law of the Medes and Persians. In Lafferty's Estate, 209 Pa. 44, 230 Pa. 496, the auditing judge upon the audit of the first account, misunderstanding the terms of a power of appointment and supposing it to be a general power instead of a special power, erroneously ruled in accordance with that impression. This decision was affirmed on appeal by the Supreme Court in 209 Pa. 44, and when, on the subsequent accounting of another fund, arising under the same will, this court endeavored to correct the mistake, the Supreme Court held on appeal, 230 Pa. 496, that the prior decision had become the law of the case and must be followed without re-examination. But in Lafferty's estate the Supreme Court itself had determined the law and therefore this court could not alter or modify it, and such was the case in Devine's Est., 199 Pa. 250. See Bolton v. Hey, 168 Pa. 418. In other words, until the "law of the case" has been settled by a decision of the appellate tribunal, the lower court or the auditing judge can adopt what seems to be the correct interpretation of the law, provided of course that the controversy arises over a different res, for if the dispute is attempted to be renewed over the same subject-matter the first decision is res adjudicata under the general rule as to which Marsh v. Pier, 4 Rawle, 273, is our leading case, and Rahm's Est., 233 Pa. 602, appears to be the latest authority. And in such case the parties are forever bound, except where special remedy is afforded by a petition for review under the Act of October 13, 1840, sec. 1, P. L. (1841) 1, Stew. Purd. 3380. Our examination of the subject in other

jurisdictions as well as our own, leads us to the conclusion that the so-called "law of the case" is only such by virtue of a decision of the Supreme Court. See article on the "law of the case" by Chief Justice BIGELOW, of Nevada, 42 Cent. L. Jour. 90. And having regard to the disastrous consequences of the other view, we will hold, until corrected, that we have, in cases involving a different and distinct fund, the right to correct a previous mistake. We are thus brought to the determination of the question which of the two constructions of the will of testatrix in this case is correct. The question is admittedly a difficult one and its discussion in each of the two adjudications is so full and elaborate that it is impossible to add anything of importance to the arguments therein contained; but it is proper to say that in our opinion the cases relied upon in the argument for the exceptant are all distinguishable from the present. In Wilson v. Heilman, 219 Pa. 237, Mr. Justice ELKIN showed that the word "children" was coupled with the words "heirs of the body" in such a way as to cast the remainder upon the general or lineal heirs of the first taker, not as purchasers from the grantor but in succession by inheritance from the first taker, and a similar distinction exists in Potts's App., 30 Pa. 168; Vilsack's Est., 207 Pa. 611, while in Steacy v. Rice, 27 Pa. 75, and other cases cited, the remainder was directly "to the heirs" of the life tenant in fee simple. In Williams' App., 83 Pa. 377, also cited by the learned counsel for the exceptant in his able argument, the will of the testatrix provided a trust for her sister for life for her sole and separate use and on her decease to her appointee by will and in default of a will to such persons to whom the same would go under the intestate laws if she died seized thereof in fee, and the Supreme Court held that this clearly showed the only purpose of the trust to be the protection of a married woman during coverture; and that she being discovert took a fee; and to the same effect are Dodson v. Ball, 60 Pa. 492, and Yarnall's App., 70 Pa. 335.

We therefore conclude that the trust provided in this will in favor of Bertha Crowley must be upheld notwithstanding her discoverture; nor is it important that the discoverture occurred before the death of the testatrix. Indeed, the latter event was on April 3, 1910, and her will was confirmed by a codicil as late as July 10, 1909. If the husband was then dead (which, however, does not affirmatively appear), the confirmation of the will by the codicil, would seem to indicate the intention of the testatrix to establish a trust irrespective of coverture.

Exceptions are dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*G. Von Phul Jones*, for appellant.

No printed brief for appellee.

OPINION BY RICE, P. J., February 27, 1913:

The fund embraced in the account and distribution under review in this appeal consisted principally of the proceeds of the sale of realty made by the executors under a power contained in the will. The clause of the will which gives rise to the dispute reads as follows: "one other fourth part of my estate, I give, bequeath and devise to my executors in trust for the following uses, and purposes that is, to keep the same invested and to pay over the income thereof to my granddaughter, Bertha Crowley, wife of John C. Crowley, for and during all the term of her natural life for her sole and separate use, and from and immediately after her decease then in trust to and for the only proper use and behoof of all and every the child and children which she may leave surviving her, and the lawful issue of any of them who may be then deceased having left such issue, their several and respective heirs, executors, administrators and assigns, in equal shares forever per stirpes and not per capita."

This appeal is from the decree of the orphans' court dismissing the exceptions to the adjudication of the executors' second account and awarding one-twelfth of the fund then for distribution to the executors in trust for Bertha Crowley, the appellant, instead of awarding it to her absolutely, as she claimed should be done.

If the proper construction of the clause above quoted, and the question whether the trust ended with the death of the appellant's husband, were open questions upon the adjudication of that account, they were in our judgment correctly decided by the orphans' court, for the reasons given and upon the authorities cited in the opinions of the auditing judge and of the court in banc. But it is claimed that they were not open questions, because upon the adjudication of a former account, which related wholly to personalty, the auditing judge, by an opinion filed, decided both of them adversely to the executors' claim and awarded one-twelfth of the fund then for distribution to Bertha Crowley, the appellant. As no exceptions were filed to that adjudication nisi, it was confirmed absolutely under the rules of court. The contention is that the construction then placed on the will became the "law of the case," which, whether right or wrong, precluded the court from construing it differently in distributing the fund embraced in any subsequent account. In support of this contention, the learned counsel for the appellant cites Rahm's Est., 226 Pa. 594, 233 Pa. 602, and Lafferty's Est., 209 Pa. 44, 230 Pa. 496.

Rahm's Estate is a rather complicated case, but, as we understand the decisions in the two appeals, they do not relate to the conclusiveness of a decree distributing one fund, upon a subsequent distribution of another fund arising in the same estate, but relate only to the conclusiveness of a final decree disposing of a fund in a particular way, in a subsequent controversy between the same parties, involving the same fund. This appears by the following excerpts from Justice MESTREZAT's opinion in 233 Pa. 602: "It will be observed that the fund which

is the subject of this account was held by the appellant company as trustee under and by virtue of the decree of the orphans' court of June 6, 1908, by which the company was directed to pay the income to Louisa Rahm, during her life, and at her death, to Hopkins' administrator. The present appellant, as we have heretofore seen, appealed from that decree to this court, but subsequently discontinued the appeal, and the question of the disposition of the fund is therefore res judicata. The appellant company had its day in court and an opportunity to assert its right to the fund. . . . The appeal, however, was discontinued, the appellant thereby submitting to the decree of the orphans' court as the final and proper disposition of the fund the possession of which is now in controversy." Lafferty's Estate is more nearly like the present case, and, in view of earlier as well as later cases, we deem it important to call attention, in some detail, to its distinguishing features. It appears by the report of the first appeal (209 Pa. 44), that a testator created a trust estate which was not to terminate until his youngest grandchild, living at the date of his last surviving child, should arrive at full age. He gave to each of his children power to appoint "to and among his or her children or issue in such shares, proportions and estates absolutely or upon trusts, as he or she may so will or appoint." Francis, one of the sons, died leaving his estate to his three children absolutely. Rose E. Carr, a daughter of Francis, subsequently died leaving a will by which she directed certain annuities to be paid by her executor and gave the residue to her children. At the time of her death the trust created by her grandfather's will had not expired. The income from the trust estate which passed to Rose E. Carr under her father's will was directed by the auditing judge to be paid to the guardian of her children. But, on exceptions to his adjudication, the court, in an opinion filed, held that it should be awarded to her executor, and, on appeal to the Supreme Court, the decree modifying the adjudication accordingly was affirmed. Subse-

quently, on the adjudication of another account, the court awarded the income then for distribution to the minor children of Rose E. Carr; but, on appeal (230 Pa. 496), the Supreme Court reversed the decree and awarded the fund to the executor or trustee under her will. Speaking of the decision in the first appeal, Justice POTTER said: "That decision necessarily involved the determination of the question whether or not the will of Francis Lafferty was a valid exercise of the power of appointment given to him in the will of his father. After the lapse of some six years, precisely the same question, in the same estates, under the same wills, is again presented by the decree from which the present appeal is taken. The decision in Lafferty's Est., 209 Pa. 44, became the law of the case and stands as such." The difference between that case and the present is substantial. There, the construction of the will, which was held to be the "law of the case," and therefore controlling in subsequent distributions under the same will turning on the same question, was the construction which the Supreme Court had placed upon it in a contested proceeding in which the question was brought fully before them for final determination. Here, the claim is, that the construction of a will adopted by an auditing judge, in distributing the fund embraced in a partial account, becomes the "law of the case" when the distribution is confirmed by the orphans' court, and must control in all subsequent distributions of other funds of the same estate; and this, too, though the first distribution was confirmed because no exceptions were filed to it. This would be carrying the doctrine as to res judicata and as to the "law of the case" far beyond what was decided in Lafferty's Estate and would be in conflict with many other authoritative decisions, rendered both before and since, upon the precise point upon which the case before us turns. Thus, in Guenther's App., 4 W. N. C. 41, the distribution of the testator's estate depended on the construction of his will and of sec. 2 of the Act of May 6, 1844, P. L. 564. At the audit of the first account

a niece claimed her mother's share, the auditor allowed her claim and no exceptions were filed to his report. In an adjudication of a second account, which involved precisely the same legal question, the auditing judge held that she was not entitled to any part of the fund for distribution. The orphans' court dismissed her exceptions and confirmed the adjudication, and, upon appeal, the Supreme Court affirmed the decree, saying: "The prior decree of the orphans' court was conclusive only as to the fund then distributed." Again, in Kline's App., 86 Pa. 363, it appeared that an auditor was appointed to distribute the fund embraced in the first account of the executors, before whom the appellant appeared and claimed to participate as a residuary legatee. The auditor's report, that he was not a residuary legatee and disallowing his claim, was confirmed by the orphans' court. On the audit of the final account of the executors he again claimed a share as a residuary legatee, first, in the fund embraced in the former account, and, second, in the fund for distribution on the final account. The auditor and the orphans' court disallowed both claims, but, on appeal, the Supreme Court held that upon a proper construction of the will and codicils, he was a residuary legatee and therefore, so far as he was excluded as such from a share in the fund not included in the first distribution, there was error. Speaking of the first decree, Justice MERCUR said that it must be held to be conclusive "as to the fund distributed," but not conclusive "as to every question considered," and that Guenther's Appeal ruled the case. The same general question arose in Reilly's Est., 190 Pa. 509, and was decided in the same way upon the authority of the two cases above cited. Again, in Lease v. Ensminger, 5 Pa. Superior Ct. 329, it was held, upon application of the principle of Guenther's App., that the finding of an auditor, confirmed by the orphans' court, excluding a husband from participation in the personal estate of his wife, by reason of neglect to support his wife, was conclusive only as to

the fund then distributed, and did not operate as res judicata to preclude the husband from having that question determined by a jury in an action of ejectment for the purpose of determining his right to the real estate as tenant by the curtesy. In Raeder's App., 167 Pa. 597, the principle for which Guenther's Appeal and Kline's Appeal stand was applied upon the authority of those cases; and the principle has been impliedly recognized in the analogous cases relating to the correction of inequality of distribution on a partial account, by a subsequent distribution of other funds of the same estate. See Townsend's App., 106 Pa. 268, 274; Grim's App., 109 Pa. 391, 397, 147 Pa. 190; Yetter's Est., 160 Pa. 506, and Stahl's Est., 25 Pa. Superior Ct. 402. In the last-cited case our Brother PORTER said: "The decree of the court upon the first account was, as to the residuary legatees, conclusive only as to the fund then distributed; and did not determine that all subsequent distributions must be made upon the same theory." In Reed's Est., 237 Pa. 125, decided in July last, Justice ELKIN reviewed some of these last-cited cases and said: "There is nothing new or novel in the principle underlying these cases. It is just, reasonable and equitable. It is predicated upon the theory that in the distribution of a partial account the rights of distributees are not finally adjudicated."

In his opinion overruling the exceptions to the adjudication in the present case, Judge GEST, speaking for the orphans' court, said: "It frequently happens that questions of law are imperfectly presented to the auditing judge and decided without proper argument, or the facts of the case are not fully developed, and where no exceptions are filed, either because counsel themselves do not realize the importance of the decision, or the amount involved, does not warrant the expense of litigation, or for some other sufficient reason, it would be a serious matter to hold that an error of law once committed could never be corrected in the future distribution of another and distinct fund, but remains unchangeable like the law

of the Medes and Persians." We are of opinion that such a rule was not declared in Lafferty's Estate, and is not deducible from what was decided, and that the present case is ruled, so far as this question is concerned, by Guenther's Appeal and the cases that follow in its lead. No reference was made in Lafferty's Estate to any of this latter class of cases or to the principle controlling them, and there is no such conflict between them and that decision as would justify us in assuming that the Supreme Court intended to overrule them.

The decree is affirmed at the costs of the appellant.