# Lennig's Estate.

*Executors and administrators—Compensation fixed by will—Commissions.*

1. Where an executor accepts his office with knowledge of a provision in the will fixing his compensation, he is bound thereby, and this applies even where the executor in the performance of his duties, is required to sell real estate in another state.

2. Where an executor whose compensation is fixed by the will claims commissions in his account, and the trustees to whom the fund is distributable do not except to the item of commissions, the auditing judge does not exceed his powers in calling the attention of the trustees to the provision in the will, and if they then except, in withholding

confirmation of the adjudication, and surcharging the executor with the amount of the commissions claimed.

3. The mere fact that an auditing judge may have mistakenly allowed an executor commissions in one account, will not prevent an auditing judge on the adjudication of a later account, involving a different fund, from refusing commissions to the executor.

Argued Dec. 17, 1912. Appeal, No. 212, Oct. T., 1912, by John B. Lennig, surviving executor, from decree of O. C. Phila. Co., Jan. T., 1891, No. 142, dismissing exceptions to adjudication in Estate of Charles Lennig, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

ANDERSON, J., filed the following opinion:

The testator by his will provided:

" As executors of this my will I appoint my sons Nicholas and John Bouligner Lennig with a compensation to them for its faithful Execution of Ten thousand Dollars to each of them; having while living amply provided for these my Sons I have not otherwise remembered them in this my will than as incidental Legatees."

The compensation thus provided for was paid to the accountants out of former accounts. Claiming however that they had performed extraordinary services in the sale of certain timber on lands in West Virginia, they took credit in the present account for additional compensation. In his original adjudication the auditing judge disallowed this credit, and upon exceptions the account was recommitted to him in order that he might take testimony as to the services rendered. In his readjudication, after calling attention to the fact that Judge PENROSE in adjudicating the third account of the executors had allowed commissions at the rate of two and one-half per cent on the sale of real estate, the auditing judge reiterates his opinion that the executors are not entitled to further compensation for services, and in support thereof cites Hays's Estate, 183 Pa. 296.

We think the decision of the Supreme Court in the case cited fully sustains the auditing judge. In that case the compensation given by the will was $1,000, to each of the executors, while commissions at the rate of three per cent would have amounted to $18,000. Mr. Justice GREEN delivering the opinion of the court said: "We held in Shippen v. Burd, 42 Pa. 461, under a will which prescribed the method and the extent of the compensation which was to be received by the executors for all the services to be performed by them, the executors were bound by the provisions of the will in this respect. There was a trust to be executed in relation to certain real estate, and as to this the executors claimed additional compensation because they were acting as trustees which was a service outside of their duties as executors. But we held that although this was a trust the executors were bound to execute it as executors, and it was therefore part of their duty as executors, and the compensation provided for them as executors must be regarded as and conclusive upon them as to all duties which devolved upon them in the execution of the will. . . . The fundamental principle upon which this decision was based was that the executors having accepted their office under the will were bound by its terms in respect of the compensation they were to receive as such." And, after citing Mr. Justice PAXSON in Harper's Appeal, 111 Pa. 243, he said: "He (the executor) is under no obligation to accept the trust. If he does not like its terms he is perfectly at liberty to decline it. But if he accepts it and claims his right to act as executor under the will, certainly he is bound by the terms in which that right is given." And he concludes: "Their compensation for services as executors was definitely fixed by the will at $1,000 each. They accepted the office as executors with full knowledge of this provision, and there is no good reason why they should not be bound to comply with the conditions upon which they held their title."

Applying this rule to the present case we find that the

executors accepted this trust with the full knowledge that their duty included not only a conversion and accounting for the personal estate but also the turning over to his trustees "of the net proceeds to be derived from the sales of my [his] real estate when and as the same shall have been by my executors sold and converted into personalty." This necessarily implied that the executors should perform the services necessary for such conversion. Whether therefore we consider this timber as realty or personalty it was directly under the terms of the will. Admittedly this estate has taken a long while in its settlement, and required constant duties on the part of the accountants, and that there have been numerous accounts filed; but, if the executors had considered the compensation fixed by the testator as insufficient for the services necessary to carry out his will, it was their right and privilege to decline to accept the offer. Having qualified as executors under the will and received the compensation fixed thereby, it is now too late to repent their bargain and ask for additional payment.

Nor did the evidence before the auditing judge disclose any special services rendered by or on behalf of the executors. The witness who testified as to investigation to determine the adequacy of the price at which the timber was sold, also testified that he was employed by the trustee to whom the fund will ultimately go.

It is true that Judge PENROSE, in the third account filed, allowed compensation for services rendered in the sale of real estate. But there is nothing to show that any objection was made thereto, or that his attention was called to the clause of the will *by the executors' services were compensated.* And the auditing judge was not bound by the prior adjudication is settled, so far as this court is concerned, by the opinion of Judge GEST in Kellerman's Estate, 356 April 1911, which contains an elaborate review of the cases on the subject.

The exceptions are dismissed.

DALLETT, P. J.: I cannot concur in this opinion as

600 LENNIG'S ESTATE.

Opinion of Court below—Opinion of the Court. [53 Pa. Superior Ct.

under all circumstances of the case I would have allowed the commissions as claimed.

GUMMEY, J., concurs in this dissent.

Filed June 15, 1912.

*Francis F. Eastlack, Jr.*, for appellant.—The auditing judge exceeded his judicial power: Stitzel's Estate, 221 Pa. 227; Myers v. Kingston Coal Co., 126 Pa. 582.

The accountant is entitled to $875, the compensation claimed in the account: Shippen v. Burd, 42 Pa. 461; Brolasky's Estate, 4 Pa. Dist. Rep. 218; Raisig v. Graf, 17 Pa. Superior Ct. 509; Myers v. Kingston Coal Co., 126 Pa. 582.

*Maurice Bower Saul* and *John G. Jonnson*, for appellee, cited: Hays's Estate, 183 Pa. 296.

OPINION BY RICE, P. J., May 15, 1913:

The will of the testator contained this provision:

"As Executors of this my will I appoint my sons Nicholas and John Boulinger Lennig with a compensation to them for its faithful Execution of Ten thousand Dollars to each of them; having while living amply provided for these my sons I have not otherwise remembered them in this my will than as incidental legatees."

In the account involved in this appeal the surviving executor charged himself, inter alia, with $35,000, received from the sale of standing timber in West Virginia, and took credit for $875.00, as commission at two and a half per cent on the proceeds of sale. No exceptions were filed to the account. But in his adjudication confirming the account nisi the auditing judge quoted the above provision of the will, and expressed the opinion "that the commission above referred to is improperly charged, in that the sale of the property and the turning over of the net proceeds was part of the accountant's duty as executor." Then, after stating that the trustee under the will, through its counsel, stated that it made no

objection to the commission, but did not express assent to its allowance, the auditing judge further said, "Whether or not the trustee may, in the exercise of a sound discretion, allow compensation in the nature of a commission where the will provides in definite terms for a sum certain need not now be discussed or determined, in that the award will be made without prejudice to the rights of the parties who may be affected by such allowance." A few days after the confirmation nisi, the auditing judge upon the oral request of counsel for the trustee, suspended until further order the confirmation of the account as to the credit of $875, for commissions. Afterwards, the the account having been called for re-audit, the auditing judge filed a supplementary adjudication, setting forth that in the prior adjudication he had allowed the commission because the trustee did not object, "and that at this rehearing the trustee filed a formal objection in order that if the commission was disallowed exception might be filed," and concluded with a surcharge of the executors with the amount of the commission. Exceptions were filed by the accountant and still later the court recommitted the adjudication to the auditing judge for his further consideration, after hearing the testimony to be presented on behalf of the accountant. At the re-audit, pursuant to this order, testimony was taken but the auditing judge adhered to his former conclusion, that the accountant, as executor, was not entitled to compensation beyond the sum specified in the will. To his readjudication, in accordance with this conclusion, the accountant filed exceptions which, after hearing before the court in banc, were dismissed, two of the judges dissenting, and from that action, which all the parties have treated as a final decree, confirming the readjudication, this appeal was taken by the accountant.

1. Under the first assignment of error it is argued that the auditing judge exceeded his judicial power in questioning the accountant's right to commission, in the absence of exception or objection by a party interested, and in

support of this contention counsel cites Stitzel's Estate, 221 Pa. 227. In that case it was declared that a surcharge was an adjudication against the accountant which could not be made without notice to him, and an opportunity to be heard before he is condemned, and that a surcharge of the kind made in that case for an overpayment of counsel fee was not one that could be made at all by the court, without an exception by some interested party before it. But in the same connection the court said that the duty to examine with due consideration carries with it the right of the court on its own motion to make inquiries, suggest objections and call for explanations, and further on in the opinion the court said, "All that the court could properly do was to notify the parties, state the objections and make sure that the trustees understood the court's views. After that the decision rested with the trustees." We have no means of knowledge as to what occurred at the first audit except what is furnished in those parts of the opinion of the auditing judge which we have quoted, and we think it quite clear that what he said in that opinion cannot be regarded as being in excess of his judicial power as defined in the case cited or as indirectly coercing the trustee to object to the commission. All that the learned judge did was to express his views as to the right to compensation beyond that mentioned in the will, and in doing so he was well within his judicial power, and his remarks are not open to just criticism.

2. It appears that in the adjudication of a former account commissions were claimed and allowed on the proceeds of the sale of real estate involved in that account. It does not appear that objection to such allowance was made by anyone. With regard to this adjudication the auditing judge says: "The record which was offered in evidence shows that the accountants alone were represented, and the petition does not set forth the provisions of the will. That account states the executors reserve the question of their compensation for the consideration of the court. Whether this means as to the fact or as to the

amount, does not appear, and the then auditing judge, without comment (though, of course, it cannot be said without consideration), deducted commission at the rate above stated from the net proceeds of realty then shown to be on hand." We are of opinion that this former adjudication cannot be regarded as conclusive as to the fund now for distribution. The question was considered by us in the recent case of Kellerman's Estate, 52 Pa. Superior Ct. 412, and we need not go over the ground again.

3. The general rule that where an executor accepts the office with knowledge of a provision in the will fixing his compensation, he is bound thereby is well settled: Hay's Estate, 183 Pa. 296. We find nothing in the circumstances of this case to take it out of the general rule as enunciated and applied in the case cited. The opinion of the orphans' court upon that question covers the ground so satisfactorily that we deem it unnecessary to add anything further.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.