Grim's Estate. Jacob Grim's Appeal. C. L. Grim's Appeal. Kale's Appeal.

*Interest on moneys paid by mistake.*

Where reclamation is ordered of moneys which have been paid under a mutual mistake of the parties, interest is due only from the date at which the demand for restitution was made.

*Decedent's Estates—Mistake in distribution—Reclamation—Interest.*

Where the next of kin are paid under an award an amount of void accumulations in excess of their share, and the widow is thereby deprived of her share, the court will subsequently award to her out of the shares of the next of kin in the principal, a sum sufficient to make good her share of the void accumulations, but will not allow her interest on the same.

Argued Jan. 8, 1892.    Appeals, No. 413, Jan. T. 1891, Nos. 19 and 56, July T., 1891, by E. S. Kale, Jacob Grim et al. and C. L. Grim, from a decree of O. C. Philada. Co., Oct. T., 1878, No. 555, dismissing exceptions to adjudication.    Before PAXSON, C. J., STERRETT, GREEN, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

On December 11, 1890, the account of Joseph Grim, surviving trustee under the will of John Grim, deceased, was called for audit before PENROSE J., who found the facts to be as follows:

" His will, proved May 31, 1865, gave to his wife his furniture, etc., absolutely, and his house, 828 Marshall street, for life or during widowhood ; and the residue of his estate, real and personal, to his executors, in trust to collect the rents and income, and to pay thereout to his wife, for life or during widowhood, $1,200 per annum; and 'if there should be any surplus income,' to invest it from time to time until the death or remarriage of his said widow.

" The estate consisted mainly, if not exclusively, of realty. The income proved to be more than enough to pay the annuity, and the surplus was from time to time, invested in accordance with the provisions of the will.

" In December, 1881, sixteen years after the death of the testator, a petition was filed by Peter Grim and the other residuary legatees, or their representatives, setting forth the provisions of the will, and averring that the accumulations were contrary to law; and an auditor, John A. Clark, Esq., was appointed to ascertain the amount of accumulation and make distribution among the parties entitled.    A report making distribution among the residuary legatees or their personal representatives was subsequently filed by the auditor June 3, 1882, and an exception on the ground that the award was to personal representatives of deceased legatees instead of their distributees was dismissed, with the suggestion that the void accumulations did not pass under the will at all.

" The widow, Mrs. Sophia Grim, did not claim before the auditor, nor did she, notwithstanding the intimation given in the opinion upon the exceptions, ask to be permitted to come in against the fund, the amount of which was $53,985.38.    The

consequence was that she did not participate in the distribution. A subsequent account, however, having been filed by the surviving executor, showing a further accumulation of surplus income, amounting to $8,960.16, it was claimed on her behalf that the void accumulations passed under the intestate laws, one half to her, as widow, and the other half to the brothers and sisters and children of deceased brothers and sisters of the decedent; and the latter having, as residuary legatees, already received more than one half the entire surplus, that the balance then in the accountant's hands, as above ($8,960.16) should be awarded to her. The claim was allowed, and the jurisdiction (filed April 18, 1884) was, upon appeal, sustained by the Supreme Court: Grim's Appeal, 109 Pa. 391.

" Under adjudications of subsequent accounts further awards of balances arising from surplus income were made to Mrs. Grim, and Joseph Grim, to whom she had assigned one tenth of her claim; to wit, by adjudication filed November 7, 1885, $3,115.58, and by adjudication filed March 14, 1887, $3,311.13.

" Of the total surplus income thus distributed ($53,985.38, $8,960.16, $3,115.58, and $3,311.13), $69,372.25, the widow has received, as above, only $15,386.87. Her share was one half, or $34,686.13; being $19,299.26, exclusive of interest, more than the amounts paid to her. The difference was distributed among the persons in whose favor the auditor of the first account decided, who then received just that much more of the estate than they were entitled to."

It was asked on behalf of the executrix of Mrs. Grim that there should be withheld from the shares of the residuary legatees, and awarded to her, the amount, still due her as above, overpaid to them, under the auditor's report, ($19,299.26) with interest from June 3, 1890. The auditing judge awarded to the executors of Mrs. Grim $19,299.26, but refused to allow the interest claimed.

Charles F. Grim, administrator, d. b. n c. t. a. of Samuel Grim, deceased, filed various exceptions to the adjudication, which were in substance that the auditing judge erred in awarding to the executrix of Mrs. Grim the sum of $19,299.26.

Elizabeth S. Kale, executrix of Sophia Grim, deceased, filed the following exception to the adjudication:

" Because the learned judge has refused to allow interest on

the' amount due to the widow on account of her claim to the surplus income under the intestate law."

ASHMAN, J., filed the following opinion:

The award to the widow of a sum which was required to' make good her share of the void accumulations was exactly in line with the decision in Grim's Appeal, 13 Out. 391. Whether her title was by way of subrogation or by some other mode of substitution, is a question merely of words, the fact was that moneys, of which one half belonged to her under the intestate laws, were paid over on the settlement of the first account, exclusively to the next of kin, and after awards to her of the balances found by subsequent accountings there still remained, to be reimbursed to her, a deficiency of $20,671.41. The final account which is now before us, shows a balance of accrued income of $2,744.31, which, applied to the deficit, reduces it to $17,927.10; and the question passed upon by the auditing judge was whether the residuary legatees, who in the capacity of next of kin had received that amount in excess of their interests, should refund it out of their shares in the principal. He decreed that they should, and his reasoning on the point is simply conclusive.

Upon the incidental question whether the award should carry interest, the conclusions of the auditing judge seem to be sus-' tained by the authorities in Pennsylvania. They have adopted as a uniform rule, the proposition that where reclamation is ordered of moneys which have been paid under a mutual mistake of the parties, interest is due only from the date at which the demand for restitution is made. Thus, in Vandegrift's Ap., 80 Pa. 116, a legacy had been charged upon land and the devisee tendered the amount of the legacy, which was declined, pending a contest over the will which had been instituted by the legatee. Afterwards the legatee presented her petition asking for payment; and interest was refused by the court from the time of tender until the date of filing of the petition. In Brown v. Campbell, 1 S. & R. 176, the defendant had mistakenly appropriated through his agents, certain moneys, which were subsequently discovered to belong to the plaintiff, to his own use. TILGHMAN, C. J., said: "The rule is to allow interest where the defendant has retained the money of the plaintiff unlawfully and against his consent. Until the defend-

ant was informed that the plaintiff's money was applied to his
use, he was in no default, and therefore ought not to pay in-
terest.   But being informed, he became a wrongdoer in with-
holding payment, and therefore is subject to damages to the
amount of the interest." So, in King v. Diehl, 9 S. & R. 409,
a payment having been made, under the mistaken belief by
both payer and payee that a legatee took an absolute, and not
a defeasible interest, the same judge remarked: " The plaint-
iffs could not be blamed for receiving what they thought was
their right and what the defendants were willing to pay; until
the defendants explained the mistake and demanded repay-
ment, it cannot be said that the plaintiffs unjustly withheld
their money and should therefore be subject to interest."
Bank v. Commonwealth, 10 Pa. 453, followed to the same
effect, and in Railway Company v. City, THOMPSON, J., sum-
med up the decisions as follows: " The rule seems therefore to
be this, that when a mutual mistake occurs between the payer
and receiver of a sum of money, by which the whole has not
been paid, or too much has been received, interest is not re-
coverable on the sum so withheld or received, unless it has
been unjustly withheld or unjustly received. . . . After de-
mand, if it be refused, and it turns out that there was money
due which ought to have been paid, it will bear interest from
demand."

The present case is stronger than those which have been cited,
because it presents a mistake which was shared by the court
as well as the party.   Promptly upon the assertion by the
widow, of her rights, the fund for distribution was paid over
to her in partial reimbursement, and this was followed by an
award to her of the balance shown by a subsequent account.
There is no room for a suggestion of fraud or even of laches,
anywhere in the transaction, and therefore nothing by which
the case can be made an exception to the rule.

The exceptions are dismissed.

*Error assigned* by E. S. Kale, was the overruling of her ex-
ception, quoting it; and by C. L. Grim the overruling of his
exceptions, quoting them.

*George L. Crawford, Gormley* and *Snare* with him, for Eliz-
abeth S. Kale.

*Edwin O. Michener, Robt. W. Finletter* with him, for Charles L. Grim.

*S. N. Rich,* for Jacob Grim.

PER CURIAM, January 25, 1892.

This decree is affirmed upon the opinion of the learned judge of the orphans' court, and the appeal dismissed at the costs of the appellant.