## Commonwealth *v.* Newton Township et al., Appellants.

*Road law—Townships—Agreement with street railway company —Taking over road as state highway—Repairs—Annual payments —Act of May 31, 1911, P. L. 468—Interest—Commonwealth.*

1. A street railway company is required to maintain and repair the portion of the highway occupied by its facilities, and it is immaterial whether it makes the repairs by its own equipment, or pays the township a fixed sum annually for such repairs.

2. If the street railway company enters into an agreement with the township to pay a fixed sum per year for repairs, the Commonwealth, in taking over the road as a state highway under the Act of May 31, 1911, P. L. 468, is entitled to such payments.

3. If the township has collected the annual payments after the Commonwealth has taken over the road, the state may recover the amount of such payments from the township, but, in a suit for the same, interest will not be allowed, if the state has not made demand for payments prior to the suit.

*Constitutional law—Property rights—Franchise charge.*

4. This annual payment is not a franchise charge or a part of the township's property created under a constitutional power, that could not be taken away by legislative enactment.

Submitted October 13, 1922. Appeal, No. 2, May T., 1922, by defendants, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1918, No. 1, for plaintiff, in case tried by the court without a jury in suit of Commonwealth v. Newton Township, James H. Wharton et al., Supervisors. Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Judgment modified.

Assumpsit for money had and received. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

The case was tried by the court without a jury.

Judgment for plaintiff for $2,076. Defendants appealed.

*Error assigned,* inter alia, was order dismissing exceptions, quoting record.

*W. Roger Fronefield* and *Ralph J. Baker,* of *Hause, Evans & Baker,* for appellants.—Any statute under which the Commonwealth claims the right to take from the township a payment due it and for which it has stipulated as a condition for its grant of local consent to a street railway must be strictly construed in favor of the township. Explicit words are necessary to deprive the

township of rights which it has acquired and long enjoyed: Com. v. L. & P. Co., 262 Pa. 238.

If the Act of 1911 does purport, properly construed, to deprive the township of a continuing benefit for which it has stipulated as a condition of, and part of the contract for, the grant of consent to the construction and maintenance of an electric railway, the statute is invalid under section 9 of article XVII of the state Constitution and cannot be enforced. It would deprive the township of the benefit of a valid condition attached to its necessary grant of local consent to the electric railway, as to which the township enjoys peculiar rights under that section of the Constitution, of which the Commonwealth cannot deprive it: Allegheny v. Ry., 159 Pa. 411; McKeesport v. Ry., 2 Pa. Superior Ct. 249; Carlisle v. Ry., 245 Pa. 561; West Chester Borough v. Cable Co., 227 Pa. 384; McKeesport v. Ry., 252 Pa. 142; Carlisle & Mechanicsburg St. Ry. Co.'s App., 245 Pa. 561.

*Sterling G. McNees,* Deputy Attorney General, *George Ross Hull,* First Deputy Attorney General, and *George E. Alter,* Attorney General, for appellee.—The Commonwealth is entitled to the benefits of this contract and to the annual payments of $300 provided for therein: Reading v. Traction Co., 202 Pa. 573; Reading v. Traction Co. 215 Pa. 250; Chambersburg Boro. v. Ry., 258 Pa. 57.

OPINION BY MR. JUSTICE KEPHART, January 3, 1923:

Section 5 of the Act of May 31, 1911, P. L. 468, applying to highways taken over by the State, transfers to the latter the benefit of all rights a township may have in any agreement with a company using such highway, the terms of which require its maintenance. The agreement in this case, between the traction company and Newton Township, was based on "permission" to build and operate a railway on the township road. This privilege was granted on the following terms and conditions: first, the railway company to pay $1,000 on the execution

of the agreement, and, second, in lieu of keeping the road in repair, to pay $300 annually, commencing as soon as the roadbed was occupied. Appellants argue that the Act of 1911 is limited to situations wherein the railway company actually supplies the materials and does the physical labor for the maintenance and repair of the highway, and is not intended to include agreements which require the street railway company to maintain the roadway by the payment of a fixed sum of money to the township. Its further contention is, the $300 annual payment was a franchise charge, now a part of the township's property created under a constitutional power, that could not be taken away by legislative enactment.

As to the latter, in construing the covenants of an agreement we must consider, apart from it, the legal relations that subsisted between the parties at the time the agreement was entered into, and whether the effort made to supplant those legal relations, by a contract substituting other duties in their place, was successful. Under common law principles, a street railway company is required to maintain and repair the portion of the highway occupied by its facilities: Chambersburg Borough v. Chambersburg, etc., Co., 258 Pa. 57, 60. "When the State gives up a portion of one of its highways to particular use, without providing that what had been the duty of the municipality as to it shall continue, such duty devolves upon the party acquiring the right to use it, and a street railway company, given the right to use such portion of a street as is needed for its tracks, in taking charge of it, is charged with the duty of properly maintaining it": Reading v. United Traction Co., 215 Pa. 250, 255. The agreement recognized a duty that needed no constitutional provision to assert it. Its intent and purpose was to keep in repair the highway thus occupied, by substituting for its legal duty another coequal with it. The consideration for the different undertaking was based on the primary duty to repair; this latter could not be departed from, and the performance

of the substituted duty, even by the township, must ulti-
mately result in the repair of the road.  It makes little
difference as to the substituted method, or to the ways
and means employed to accomplish the purpose.  The act
reaches the purpose and includes the means necessary to
accomplish it, whether the company must maintain by
its own employees or by the payment of a fixed sum, or
by any other means.

This compensation, "in lieu of" keeping the road "in
repair," was not given for the consent of the local au-
thorities, as provided by section 9 of article XVII of the
Constitution, which reads "No street passenger railway
shall be constructed within the limits of any city, bor-
ough, or township without the consent of the local au-
thorities."   The agreement, by its terms, *imposed con-
ditions on the use of the highway and the privilege to
construct the facilities of the railway thereon.*  "Con-
sent" to enter the township, or "construct within the lim-
its" as such, is not mentioned except as it may be inferred
from the "permission" to use the roadway.  The Con-
stitution refers to and prohibits construction within a
township without its consent.  On the execution of the
agreement, $1,000 was to be paid.  Because no reason is
there given for this payment, it may be treated as being
for "consent to construct within the township."  But the
covenant to pay $300 is predicated on a desire of the
company to be relieved from the burden of actually doing
the work necessary to keep it in repair.  The money was
to be used to repair and maintain, and was to continue
as long as the road was occupied by the traction com-
pany.  Without more definite language, the agreement
should not, to say the least, be construed as placing this
consideration under the constitutional provision, and the
township cannot claim [for it] any special inviolability
or right.  The legislature, as owner, took the highway
from the control of the township and placed it under the
state highway commissioner.  It was the state's property
to be used generally by all the people.  The State had the

power to take all the benefits to which its property was entitled, and which came into being from the nature and existence of such property; by the same act, it assumed the burdens incident thereto.

The statute operated when the notice provided therein was given to the township in 1912 that the State formally took over this part of Route 133. Thereafter the township had no status on which to found a right arising under the doctrine of payment to one of two conflicting claimants (Real Estate Saving Institution v. Linder, 74 Pa. 371, 373), or where money has been voluntarily paid in good faith and since used by the municipal authorities: 27 Cyc. 859, 863. When payment was made to the township, the money became state funds and should be treated as money received for state use. The township, in receiving, could not assert a claim as a creditor. Its position as a territorial subdivision of the State is very different from what it would have been if the transaction had been between individuals. Having received the money without right, on account of a matter due its principal, the fact that it was used for ordinary township expenses, and accounted for to its taxpayers on the mistaken idea of an agent to its principal, will not avail, notwithstanding the delay by the State for five years to make demand. The principle of Cox v. Prentice, 3 Maule & Selw. 344, 348, does not apply. The paramount principle here is the State dealing with one of its municipal subdivisions as agent. Change of taxpayers by new persons coming into a district do not affect municipal liability.

The State made no claim until after five payments had been received from the railway company. The money was accepted because of a mistaken belief in its ownership, and without notice that the State intended to exercise its right under section 5 of the Act of 1911.

There is nothing to show want of good faith, and, under any fair construction, interest should not be allowed until demand, here made when this suit was

brought. The court was in error in allowing interest from the several dates of payment to the township: Grim's Est., 147 Pa. 190, 193; Hunt v. Nevers, 15 Pick. (Mass.) 500, 505.

Interest is accordingly stricken from the judgment, and, as thus modified, the judgment is affirmed.