## Bedell v. The Oliver H. Bair Company, Inc.

*Abraham Friedman*, for plaintiff; *Horace M. Schell*, for defendant.

FINLETTER, P. J., July 11, 1931.—This is a rule to assess the damages under a judgment entered against defendant. Plaintiff had sued to recover moneys paid upon a contract between the parties, which we found to be ultra vires of the defendant. The money was paid as premiums upon a contract which we held to be an insurance policy. The defendant had no corporate power to engage in insurance. The payments were made under a mutual and honest mistake of fact. No criticism is made by the defendant of this ruling, but it objects to the manner in which the damages were assessed. This was in such a way as to include payments made more than six years ago, to which plaintiff has added interest from the dates of payment to the present time.

Before coming to the technical questions involved, it may be well to state the manner in which the case arose.

The contract in question was entered into in good faith by both parties, under the mistaken belief that the defendant was empowered to enter into it. Although it does not appear in the pleadings, it was stated at bar, and we believe it to be the fact, that the Insurance Department of the state held that such contracts did not come within the definition of insurance. Relying upon this, both parties to the suit entered into the contract referred to. It was but recently that frauds committed under such policies, by evil and unreliable persons, induced the state authorities to insist that all such companies should come under the supervision of the Insurance Department. The defendant, against which no complaint was ever made, and which has conducted its business soundly and honestly, suffers from the application of the new general rule classifying all such contracts as insurance policies.

The mistake, for, notwithstanding the original opinion of the state authorities that such companies were not insurance companies, it was a mistake, was a mutual one.

It appears from plaintiff's statement that he paid a premium of 46 cents, quarterly, in May, August, November and February in each year, commencing April 30, 1902. The writ in the instant case issued on October 22, 1930.

Two questions arise: (1) Does the statute of limitations bar payments made more than six years ago? (2) From what date is interest computed?

There is a marked conflict of authority on both questions.

It is assumed that (except where statutes govern) in jurisdictions where the rule is that no demand is needed as a foundation for action, the statute bars payments older than six years, and that payments made within six years may be recovered *with interest;* and that, on the other hand, in jurisdictions where demand is required, the corollary should be that the statute does not bar payments older than six years, but that interest does not run on any of them within or without the six years, until demand for repayment is made.

In the United States courts, the rule is that suit to recover mistaken payment will lie without previous demand, and that payments older than six years cannot be recovered: Leather Manufacturers' Bank *v.* Merchants' Bank, 128 U. S. 26, 34, and cases cited below; while in England and New York it is held that the right of action does not arise until notice of the mistake has been given the defendant, and demand made for repayment: Freeman *v.* Jeffries, 4 L. R., Ex., 189, and cases cited below.

In Pennsylvania, it is the rule that interest is due only from the time of demand for repayment: Grim's Estate, 147 Pa. 190, and cases cited below.

1. In Freeman *v.* Jeffries, 4 L. R., Ex., 189, Bramwell, J., said:

"But if the plaintiff were under the circumstances entitled to be repaid the sum he claims, he ought to have given notice to the defendant of the facts by reason of which he was so entitled, because until he did so there could be no duty on the defendant to pay it over. Would the duty of repayment arise until this notice was given? I apprehend not; for at what other time could it have arisen? Not at the moment when the money was paid; for it was paid with the intention that the defendant should keep it. Was it, then, at the moment when the mistake was discovered? This would be most unjust; the mistake was the plaintiff's, and the discovery is the plaintiff's, and the defendant may still think that everything is right, and that no mistake at all was committed. Therefore, until notice no duty would arise, and, therefore, no cause of action. . . . It is contended that no demand is necessary where there is already a cause of action. But this is begging the question; for the

contention of the other side is, that there can be no cause of action till demand." See, also, Southwick v. Bank, 84 N. Y. 420; Stephens v. Board of Education, 3 Hun. 712, 715; United States v. Park Bank, 6 Fed. 852; Marine Bank v. City Bank, 59 N. Y. 67.

2. In Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 34, the statute of limitations was involved. A forged check had been presented by the defendant and paid by the plaintiff under a mutual mistake as to genuineness of the endorsements. It was held that the plaintiff's right of action accrued and the statute of limitations began to run immediately upon payment. No demand was necessary to raise a cause of action.

"The question then is whether, if a bank, upon which a check is drawn payable to a particular person or order, pays the amount of the check to one presenting it with a forged endorsement of the payee's name, both parties supposing the endorsement to be genuine, the right of action of the bank to recover back the money from the person so obtaining it accrues immediately upon the payment of the money, or only after a demand for its repayment."

The case, however, does not turn on the mutual mistake, but on an implied warranty, for the court goes on to say:

"Whenever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when in fact he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment, and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use. His right of action accrues, and the statute of limitations begins to run, immediately upon the payment," citing Bree v. Holbech, 2 Doug. 654; Utica Bank v. Van Gieson, 18 Johns, 485; Bank of United States v. Daniel, 12 Pet. 32, 56; Dill v. Wareham, 7 Met. 438; Sturgis v. Preston, 134 Mass. 372; Earle v. Bickford, 6 Allen, 549; Blethen v. Lovering, 58 Me. 437; Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74. See Keener on Quasi-Contracts, 141, et seq., for a discussion of these cases.

3. We have been unable to find any case in Pennsylvania in which the statute of limitations was raised in cases of mutual mistake of fact. But there is abundance of authority for the proposition that interest does not run until demand of repayment is made. It would follow then that the statute does not run until demand is made.

In Com. v. Newton Township, 276 Pa. 172, a township (which was not entitled to collect certain taxes, due after a certain date to the state) collected them. It was held that the state could recover the payments, but that interest would not be allowed, if the state had not made demand prior to the suit. Kephart, J., said: "The money was accepted because of a mistaken belief."

"There is nothing to show want of good faith, and, under any fair construction, interest should not be allowed until demand," citing Grim's Estate, 147 Pa. 190.

In that case it was held that, where there had been a mistaken interpretation of a will and the facts surrounding it, "where reclamation is ordered of moneys which have been paid under a mutual mistake of the parties, interest is due only from the date of the demand for restitution:" Grim's Estate, 147 Pa. 190.

The opinions of Ashman, J., and Penrose, J., which were adopted by the Supreme Court, include the following statement of the law:

"[The authorities in Pennsylvania] have adopted as a uniform rule, the proposition that where reclamation is ordered of moneys which have been paid under a mutual mistake of the parties, interest is due only from the date at which the demand for restitution is made. Thus, in Vandergrift's Appeal, 80 Pa. 116, a legacy had been charged upon land and the devisee tendered the amount of the legacy, which was declined, pending a contest over the will which had been instituted by the legatee. Afterwards the legatee presented her petition asking for payment; and interest was refused by the court from the time of tender until the date of filing of the petition. In Brown v. Campbell, 1 S. & R. 176, the defendant had mistakenly appropriated, through his agents, certain moneys, which were subsequently discovered to belong to the plaintiff, to his own use. TILGHMAN, C. J., said: 'The rule is to allow interest where the defendant has retained the money of the plaintiff unlawfully and against his consent. Until the defendant was informed that the plaintiff's money was applied to his use, he was in no default, and therefore ought not to pay interest. But being informed, he became a wrongdoer in withholding payment, and therefore is subject to damages to the amount of the interest.' So, in King v. Diehl, 9 S. & R. 409, a payment having been made under the mistaken belief by both payer and payee that a legatee took an absolute and not a defeasible interest, the same judge remarked: 'The plaintiffs could not be blamed for receiving what they thought was their right and what the defendants were willing to pay; until the defendants explained the mistake and demanded repayment, it cannot be said that the plaintiffs unjustly withheld their money and should therefore be subject to interest.' Bank v. Com., 10 Pa. 453, followed to the same effect."

4. It is argued that the statute of limitations (Act of March 27, 1713, 1 Sm. Laws, 76) applies to the plaintiff's claim. It may be observed that if the claim does not arise until *after demand*, the statute would have no application to the instant case, because demand was made only within the past year. And it is also true that if plaintiff's right of action is founded on quasi contract, it is not within the terms of the statute, which applies only to "any lending or contract without specialty:" Philadelphia v. Atlantic & Pacific Telegraph Co., 10 Dist. R. 376.

"It is contracts in fact not quasi contracts that are included in [the Act]:" McPherson, J., in Philadelphia v. Atlantic & Pacific Telegraph Co., *supra*.

See, also, Richards v. Bickley, 13 S. & R. 395; Roller v. Meredith, 4 Pa. Superior Ct. 461.

On the other hand, such "implied contracts" as are true contractual obligations are not deprived of their legal character by the mere fact that their existence is inferred from the conduct of the parties instead of from oral or written contracts: Wickersham v. Lee (No. 2), 83 Pa. 422; In re Margaret McCanna, 77 Pa. Superior Ct. 1.

Quasi contracts are, however, not contracts. The distinction between quasi contracts, implied contracts and express contracts was defined by Lowrie, J., in Hertzog v. Hertzog, 29 Pa. 465, thus: "1. Constructive contracts [i. e., quasi contracts], . . . are fictions of law adopted for the purpose of enforcing legal duties by actions of contract, where no proper contract exists, express or implied.

"2. Implied contracts which arise under circumstances which, according to ordinary course of dealing and . . . common understanding . . . show a mutual intention to contract." *Express contracts* are, where the terms of the agreement are avowed at the time the engagement is entered into. The distinction between quasi contracts and true contracts is summed up in the sen-

tence: "All true contracts grow out of the intentions of the parties (to transactions), and are dictated only by their mutual and accordant wills." When the intention is not expressed, it may be inferred, implied or presumed, from circumstances, as really existing, and then the contract is called an implied one. There is another class of relations which involve no intention to contract at all, though they may be treated as if they did.

In the instant case there was no intention when the money was paid that it was to be returned. The payment was made in execution of the supposed principal contract, and was intended to be retained by the defendant. It was not paid for the use of the plaintiff but for the defendant's use. No contract could be implied from the facts. The plaintiff's remedy does not then arise out of contract inferred from the facts, but from the unjust enrichment of the defendant; that is, from quasi contract. The statute of limitations, therefore, does not apply.

On the whole, then, we are of opinion that it follows as a corollary to the Pennsylvania rule of Grim's Estate, that, if interest does not run until demand, the statute does not run.

The assessment of damages should, therefore, be limited to the sum of the mistaken payments, with interest only from the date of the writ in this case, there having been no previous demand.