## Ayoob, Appellant, *v.* William Penn Trust Company.

Argued May 4, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Harry Diamond,* for appellant.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* with him *C. A. Woods,* for appellee.

OPINION BY RHODES, J., September 28, 1938:

This is an appeal by plaintiff in an action of assumpsit in which a judgment of compulsory nonsuit was entered. Plaintiff's action was to recover from defendant $1,616.33 interest on $2,000 from June 25, 1921, to December 14, 1934, together with interest on the $1,616.33 from December 14, 1934.

At the trial, plaintiff, his son, and an officer of the defendant trust company called as for cross-examination were the witnesses.

The trial judge granted defendant's motion for compulsory nonsuit. The court in banc refused to take it off, whereupon this appeal was taken.

If, upon consideration of the evidence, it appears that plaintiff established a prima facie case, the nonsuit must be set aside. In so considering the evidence introduced by plaintiff, we must assume it to be true, and give plaintiff the benefit of all inferences fairly deducible therefrom, and resolve all doubts in favor of a trial. *Allen v. Mitten Bank Securities Corp.,* 129 Pa. Superior Ct. 341, 195 A. 459; *Donze et al. v. Devlin,* 329 Pa. 1, 195 A. 882; *Westcott v. Stevenson et al.,* 131 Pa. Superior Ct. 11, 198 A. 477.

It appears that plaintiff, a Pittsburgh produce dealer in business since 1907, was in Florida in June, 1921. At that time he was doing his banking business with defendant, which relationship had existed since 1915. On June 25, 1921, while at Ocala, Florida, he sent a telegram to his son in Pittsburgh requesting $2,000. The son, who had authority to sign checks on plaintiff's bank account, drew a check payable to defendant for this amount, which was then placed in a special guarantee account in which items for which defendant itself was liable were placed. Plaintiff's account was charged with the check. Defendant wired the Leesburg State Bank, Leesburg, Florida, that it would pay draft drawn on it for $2,000. The regular procedure which plaintiff used in such business transactions was followed in this instance. Plaintiff left Leesburg before receiving the $2,000 from the Leesburg bank. He returned to Pittsburgh on July 8th. The questioned transaction was one of many similar transactions. The fact that no draft was received and charged against the credit was

not discovered by defendant until 1932. Plaintiff had his bank book balanced at the end of every month, and although he complained that there was a shortage in his account, he was not aware that the shortage was due to his failure to receive the $2,000 through the Leesburg bank. Plaintiff himself testified that he never said anything to defendant as to why he did not receive the money in Florida, and that he never asked defendant about the item in question. He had possession and knowledge of the canceled check which was issued to defendant and charged against his account.

In September, 1932, an officer of defendant discovered the unused $2,000 item in its special account. At that time plaintiff was out of business, and was indebted to defendant on two notes, the total in excess of $2,000. This sum was applied by defendant against plaintiff's indebtedness, who received from the bank the notes thus paid, and executed a new note for the balance of his indebtedness. The entire matter, plaintiff testified, was explained to him.

There was no contractual or absolute right of plaintiff to receive interest on the $2,000 item as claimed. At most, it was a credit returnable to plaintiff on demand.

We are of the opinion that plaintiff failed to establish a prima facie case, as there is no proof that plaintiff demanded a return of the $2,000 from defendant, and he can claim no interest on it unless he demanded its return. He does not complain that its application against his bank indebtedness was improper. The amount had been withdrawn from plaintiff's account by check payable to defendant, drawn by his authorized agent. It was delivered to defendant for a specific purpose; it was neither wrongfully obtained nor wrongfully used by defendant. If from mistake, misunder-

standing, or change of plans plaintiff did not use the credit as intended, it still remained subject to his action; and until he drew against it, it was at most a credit payable to him on demand. Whether defendant would have been obliged to return to plaintiff the item which had been placed in its special account even on demand, unless accompanied by release from the Leesburg State Bank or indemnity against any outstanding draft or proof that plaintiff had not drawn a draft as originally contemplated, need not be decided.

"The general rule is that interest on a debt payable on demand runs only from the time when a demand is made; or in case no specific demand is made from the date of the commencement of the action": 33 Corpus Juris p. 234, §124.

Plaintiff having shown no demand for the return to him of this item which defendant held for a specific purpose in its special guarantee account, he can claim no interest on the principal amount which defendant so held. See *Breyfogle v. Beckley,* 16 Serg. & R. 264, 265; *Thompson, Receiver, v. Schoch,* 254 Pa. 585, 597, 99 A. 72; *Com. v. Newton Twp. et al.,* 276 Pa. 172, 177, 120 A. 123; *Robinson et al. v. Stover,* 320 Pa. 308, 315, 182 A. 145.

Assignments of error are overruled.

Judgment is affirmed.