## George Cindrich General Contracting, Inc. v. Interstate Amiesite Corporation

*Robert C. Reed,* of *Wallover, Reed & Steff,* for plaintiff.

*R. Eric Simons,* of *Simons & Davis,* for defendant.

SALMON, J., March 4, 1974.—In this action in assumpsit, the jury returned its verdict ". . . in favor

of the plaintiff, George Cindrich General Contracting, Inc., the amount of $17,920.36 and $1,670.25 against Interstate Amiesite Corporation, Defendant." On motion of plaintiff, the court issued a rule on defendant to show cause why the verdict should not be molded by adding thereto "with interest at 6 percent per annum from October 12, 1966." Defendant filed answer to the rule and the matter is before us on the rule and answer. In its charge, the court did not instruct the jury as to interest and no such instruction was requested by counsel on either side. Plaintiff did demand interest in its complaint as filed.

The suit was brought upon a verbal contract for excavation and grading required in construction of a commercial building for Zayre Department Stores. Zayre entered into a contract in the spring of 1966 with Abrams Company, general contractors, for erection of the building on land of Zayre in Baden, Beaver County, Pa.

Abrams negotiated with Interstate Amiesite Corporation for the excavation and grading of the site and for blacktopping of the parking area. Interstate Amiesite became a subcontractor to do that part of the work for a lump sum. Interstate then arranged with George Cindrich to supply men and mechanical equipment to do the excavation and grading, reserving the blacktop work to itself. George Cindrich assigned the work to the corporate plaintiff herein, and the corporate plaintiff proceeded to perform the excavating and grading in accordance with instructions from Interstate.

Interstate had entered into its subcontract with Abrams for a lump sum of money based on Interstate's study of the site and the plans and its conclusion that the reduction of high spots on the site would provide ample fill to bring the low spots to grade and that

it would not be necessary to bring in fill material from the outside. Cindrich agreed to do that grading at the rate of 75 cents per cubic yard. When Cindrich completed all the grading he could do with the on-site material, it became apparent that an additional 30,000 cubic yards of fill would have to be brought in from the outside to bring the site to grade in accordance with the plans. Cindrich testified that Interstate discussed this with him at that point and arranged to supply and have him bring in the needed fill and complete the grading. This portion of the work was done between July 28, 1966, and October 12, 1966, and is the subject of this suit.

Under the pleadings and under the evidence produced at the trial, it is Interstate's contention that Cindrich agree to bring the site to grade on the basis of moving 33,000 yards of earth at 75 cents per yard, a total of $24,750, that this amount had been paid to Cindrich and that Interstate is not indebted to Cindrich for anything more. Cindrich, on the other hand, contended that he agreed to do the on-site grading at 75 cents per cubic yard and that he was not obliged to haul or grade any outside material on that basis and that the outside material constituted extra work. This was the sole issue submitted to the jury. In other words, Interstate at no time attacked or questioned the rates set forth in the invoices it received from Cindrich as attached to the complaint. The jury's verdict indicates quite simply that the jury determined the factual issue in favor of Cindrich and found that Cindrich was entitled to receive payment for the invoices submitted. Obviously, once the jury found that the original contract was only for grading on-site material and that the additional work of bringing in and grading outside material constituted extra work, the amount due Cindrich became a mere matter of

arithmetical calculation. In other words, the damages are then "liquidated" damages. In the verdict of the jury, the sum of $17,920.36 is the precise amount claimed by plaintiff under its testimony and as shown by the various invoices issued to defendant and copies of which are attached to the original complaint for hauling and grading outside fill material supplied by Interstate. Also, the sum of $1,670.25, the second item in the verdict, is precisely the amount claimed by plaintiff for fill material which it purchased and hauled to the Zayre site.

On the present issue as to the power of the court to mold the verdict, defendant contends that the molding should not be permitted because interest cannot be allowed on an "unliquidated" amount. We think defendant misapprehends the distinction between liquidated and unliquidated damages. In this case, the jury found as a fact that the work in question was extra work for which Cindrich was entitled to be paid. To be sure, there was no preliminary written agreement between the parties establishing the agreed rate per hour for the use of a roller, a high lift, a dump truck or other equipment, or for an operator. In these circumstances, the law implies a contract to pay the fair and reasonable value of the services rendered: Colish v. Goldstein, 196 Pa. Superior Ct. 188, 191, 192 (1961); Hottinger v. Hoffman-Henon Co., 303 Pa. 283, 288 (1931). There is no dispute in this case that the invoices rendered represent the fair and reasonable value of such services. Therefore, the amount of damages due Cindrich becomes a mere matter of arithmetic and under the law, is liquidated damages.

Examples of unliquidated damages would be an amount allowed for pain and suffering, or loss of earning capacity as a result of personal injuries, or damage to real property as a result of a taking under the right

of eminent domain. Such amounts cannot be arrived at by arithmetical calculations and are purely matters of estimate and opinion until they are reduced to a dollar amount by a verdict. The distinction between these examples and the present case seems to us quite obvious.

There is no dispute in the testimony that the invoices were dated and presented to defendant on May 1, 1967. Neither is there any dispute that the work was completed on October 12, 1966. Clearly, plaintiff could have liquidated his damages by presenting his invoice for payment immediately upon completing his work. However, for reasons best known to himself, he elected not to do so. Interest is to be calculated only from the time the demand is payable, that is, from the date of demand for payment: 19 P. L. Encyc. 554 §7; Second Street, Harrisburg 66 Pa. 132 (1870); Ayoob v. William Penn Trust Company, 132 Pa. Superior Ct. 496 (1938); Arcuri v. Weiss, 198 Pa. Superior Ct. 608 (1962). In all contract cases, interest is allowable as a matter of right from the time payment is withheld after it has become the debtor's duty to make payment or discharge his debt provided that damages are ascertainable by computation: 19 P. L. Encyc. 552 §6.

In Canuso v. Philadelphia, 326 Pa. 302 (1937), there was a suit in assumpsit upon a written contract for damages arising from the fact that temporary structural work erected by plaintiff to support a bridge during the general construction work had buckled and failed. Under the contract between the parties, the matter was submitted to arbitration. The arbitrators made an award to plaintiffs. It was determined that on July 19, 1932, a certain sum of money was due plaintiffs, but the trial court did not allow interest from that date. The opinion of the Supreme Court, at pages 309, 310, says:

"Plaintiffs are entitled to interest from July 19, 1932, the date when the value of the work was finally determined. The director's award in their favor had been made in the previous December, and the obligation to pay a definite sum was fixed as soon as that sum was determined. Whenever a fixed sum of money is wrongfully withheld from a party to whom it is properly due such party is entitled to interest: West Republic Mining Co. v. Jones & Laughlins, 108 Pa. 55; Gloeckler v. Imrie, 118 Pa. Superior Ct. 441. Since the court below refused to allow interest for the period since July 19, 1932, its judgment must be modified accordingly."

In the present case, plaintiff became entitled to interest when it demanded payment by presenting its invoices. The right to interest upon money owing under a contract is not a matter of discretion but a matter of legal right. In Oxford Manufacturing Company, Inc. v. Cliff House Building Corp., 224 Pa. Superior Ct. 387 (1973), plaintiff brought suit in assumpsit and a verdict was returned for plaintiff. The jury failed to allow interest and plaintiff moved the court to mold the verdict to include interest or, in the alternative, to grant a new trial. The motions were dismissed and plaintiff appealed. The opinion of the Superior Court by Cercone, J., says, in part, at page 389:

"The lower court in its opinion stated that since defendant disputed plaintiff's claim because of defective items, the claimed sum, although based on contracts, was not liquidated and that therefore interest did not accrue theron. We disagree. In West Republic Mining Company v. Jones & Laughlin, 108 Pa. 55 (1885), an early but leading case, plaintiff sued to recover the price of certain ore sold and delivered to defendant, defendant refusing to pay on grounds that the ore did not conform to samples. The lower court instructed the jury that in their discretion they

could allow or disallow interest. The Supreme Court of our Commonwealth held this instruction to be error and further held: 'A dispute has arisen respecting the performance of the contract by the plaintiffs, and the amount of the debt, *but however determined, the debt arises from contract.*' . . . In the instant case plaintiff's claim was based on a fixed sum as determined by contracts and despite the dispute which arose between plaintiff and defendant, the understanding of the parties when they entered the contract was that a fixed amount was determined for the sale of the items." (Emphasis as in original.)

And, at page 390, the court further says:

"We hold, therefore, that there should be added to the amount of the verdict interest at the rate of six per cent per year computed from the date of delivery, to-wit, June 1, 1965. In J. Purdy Cope Hotel Company v. Fidelity-Phenix Fire Insurance Co., supra, this court cited with approval Section 337 of the Restatement of Contracts which provides: '(a) Where the defendant commits a breach of contract to pay a definite sum of money . . . interest is allowed on the amount of the debt . . . *from the time performance was due,* after making all the deductions to which defendant may be entitled.' " (Emphasis as in original.)

## ORDER

And now, March 4, 1974, for the reasons stated in the foregoing opinion, the verdict of the jury is now molded by adding thereto the following language: "together with interest on said sums from May 1, 1967."