160      506
25 SC ²405

# Yetter's Estate.   Minton's Trust.   Rouse's Appeal.

[Marked to be reported.]

*Will—Life estate.*

Testatrix directed as follows: "I further give and bequeath to my beloved son John, three thousand dollars, which I order and direct to be invested as a first lien on real estate by bond and mortgage by a trustee to be appointed by the orphans' court of Monroe county, the interest to be paid annually to the said John. If by sickness or misfortune said interest should be insufficient to supply the wants or needs of said John, I order and direct said trustee to pay him such portion or portions of the principal as he may deem necessary, and, in case of the death of the said John, I order and direct this three thousand dollars or the balance thereof to be divided equally, share and share alike, to or among my brothers and sisters or their lineal heirs." *Held*, that the legatee took a life estate only in the fund.

*Decedent's estate—Distribution—Equalization of shares—Half blood.*

Where, on a partial distribution of an intestate's estate, certain relatives of the half blood, though entitled, do not participate, and the entire fund for distribution is awarded to certain only of the distributees, the inequality will be corrected on a subsequent distribution of other funds belonging to the decedent's estate, by awarding to the one who received nothing on the first distribution enough to make up his proportionate distributive share of both funds.

Argued March 5, 1894.   Appeal, No. 61, Jan. T., 1894, by Sarah Rouse et al., distributees, from decree of O. C. Monroe Co., distributing estate of Eve Yetter, dec'd.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to auditor's report.   Before STORM, P. J.

From the auditor's report it appeared that, on July 18, 1888, Eve Yetter died, leaving a will, the material portions of which are as follows:

"I further give and bequeath to my beloved son John Minton, three thousand·dollars, which I order and direct to be invested as a first lien on real estate by bond and mortgage by a trustee to be appointed by the orphans' court of Monroe county, the interest to be paid annually to the said John Minton.   If by sickness or misfortune said interest should be insufficient to supply the wants or needs of said John Minton, I order and direct said trustee to pay to him such portion or portions of the

principal as he may deem necessary, and in case of the death of the said John Minton, I order and direct this three thousand dollars or the balance thereof to be divided equally, share and share alike, to or among my brothers and sisters or their lineal heirs.

"I further order and direct the rest and residue of my worldly goods to be equally divided among my brothers and sisters or their lineal heirs."

John Minton, the son mentioned in the will, died intestate and without issue. After his death the trustee appointed by the orphans' court filed an account, showing a balance for distribution under the will of Mrs. Yetter. The executor of Mrs. Yetter had previously filed accounts which had been referred to auditors. At these audits the half-brothers of Mrs. Yetter had not appeared, and no distribution was made to them or their representatives out of the funds, but the whole amount of the funds had been awarded to the other residuary legatees. At the present audit, representatives of the half-brothers claimed to be awarded an amount sufficient to equalize them with the other legatees.

The auditor found that John Minton took only a life estate under the mother's will, and made distribution in accordance with the claim of the half-brothers.

Exceptions were dismissed by the court.

*Error assigned* was dismissal of exceptions and confirmation of report, not quoting exceptions.

*S. Holmes, S. S. Shafer* with him, for appellants.—A gift of the income arising from personal property, to one for life, followed by words expressing or implying a right to use the principal, even though followed by a gift over of the principal, or of any remaining portion thereof, is always construed to vest said personalty absolutely in the first taker: Hambright's Ap., 2 Grant, 320; Straub's Ap., 1 Pa. 86; Cox v. Rogers, 77 Pa. 160; Follweiler's Ap., 102 Pa. 581; Scholl's Ap., 18 W. N. 91.

Prima facie the first taker is the principal object of the testator's bounty, and in doubtful cases the construction leans in favor of making the gift to him as effectual as possible: Rewalt v. Ulrich, 23 Pa. 388; Fitzwater's Ap., 94 Pa. 141.

In the construction of wills the law in doubtful cases leans in favor of an absolute, rather than a defeasible estate: Amelia Smith's Ap., 23 Pa. 9; Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 219; Watson's Estate, 14 W. N. 309; Brown's Ap., 14 Atl. R. 130.

In construing a will, the circumstances of the testator, his family, and the amount and character of his property, should be taken into consideration: Postlethwaite's Ap., 68 Pa. 477.

The auditor has no more right to make an unequal distribution now, on account of some inequality in the distribution of the residuary fund, than he would have, in a distribution of stocks and bonds specifically bequeathed, to give and withhold, for similar reasons.   The will directs an equal distribution of this special fund and the auditor has no right to make an unequal distribution.

*W. A. Erdman* of *Gearhart & Erdman* for appellees.—The legacy to John Minton was simply a life estate in the land.

The cardinal rule of construction is that the intent of the testator is to be gathered from the four corners of the will, taken as a whole: Stoner & Barr's Ap., 2 Pa. 428; Miller's Ap., 113 Pa. 459.

All technical rules of construction must yield to the expressed intention of the testator, if such intent be lawful: Wright's Ap., 89 Pa. 67; Biddle's Ap., 99 Pa. 525; Baker & Wheeler's Ap., 115 Pa. 590; Still v. Spear, 45 Pa. 168; Middleton's Ap., 103 Pa. 92; Haldeman v. Haldeman, 40 Pa. 29; Middleswarth's Admr. v. Blackmore, 74 Pa. 414.

A limitation over on the death of 'the first taker, or a direction that the interest of money shall be paid annually to him for life, is held to be evidence that he has but a life interest: Myers' Ap., 49 Pa. 111; Eichelberger's Est., 135 Pa. 160; Dull's Est., 137 Pa. 112; Reck's Ap., 78 Pa. 432.

The brothers and sisters of the half blood were entitled to participate in the distribution.

He who seeks equity must do equity: Adams and Smith v. Smith, 19 Pa. 182; Davidson v. Barclay, 73 Pa. 406; Rankin v. Simpson, 19 Pa. 471; Bleakley's Ap., 66 Pa. 187.

Within the limits of its jurisdiction the orphans' court is strictly a court of equity: Bayley's Ap., 60 Pa. 354; Johnson's

Ap., 114 Pa. 132; Drennan's Ap., 118 Pa. 176; Milne's Ap., 99 Pa. 482; George's Ap., 12 Pa. 262.

One participating in former distribution is entitled to come in and participate in subsequent distributions to the extent of all the distributions: Grim's Ap., 109 Pa. 391; Grim's Est., 147 Pa. 190.

OPINION BY MR. JUSTICE GREEN, March 26, 1894:

The will of Eve Yetter contains two residuary clauses. One is the clause which gives the fund of three thousand dollars bequeathed to a trustee for John Minton, or the remainder of it left at his death, " to be divided equally share and share alike to or among my brothers and sisters or their lineal heirs." And the other is the general residuary clause at the end of the will in these words, " I further order and direct the rest and residue of my worldly goods to be equally divided among my brothers and sisters or their lineal heirs." The same persons precisely take both the remainder of the trust fund and the general residue of the estate, and the identity of their interests prevents any issue arising from the circumstance that the two funds are of separate origin. It is conceded, as it must be, that, the fund for distribution being personalty, the brothers of the half blood and their descendants take equally with those of the whole blood and their descendants.

Some contention is made that the legacy of the trust is to be treated as an absolute gift of the whole fund. But this position is entirely untenable. The legacy is not a gift of the fund for life directly to the legatee with the right to use the same or to dispose of it, but a legacy expressly to a trustee who is to invest the same and pay over the interest to the legatee during his life, with a right in the trustee to pay such portion of the principal as may be necessary in case, from sickness or misfortune, the interest should be insufficient to supply the wants or needs of the cestui que trust. There is no power of appointment or disposition conferred either upon the beneficiary or the trustee, but an express limitation over of the principal of the fund on the death of the beneficiary to other persons specifically named. There is no question that the interest of John Minton was merely a life interest in the income of the fund, and of so much of the principal as might be necessary for

his support.    The question is directly ruled by the line of cases of which Myer's Appeal, 49 Pa. 111; Eichelberger's Estate, 135 Pa. 160, and Dull's Estate, 137 Pa. 112, are examples. The last of these cases was almost precisely similar to this, as the legatee was to receive only the interest of the fund, but the principal might be used if necessary for his support.

The only remaining question is, whether the relations of the half blood, not having received any part of the first two distributions, may be equalized with those of the whole blood who took all of those distributions.    This question also is entirely free from doubt.    In Grim's Appeal, 109 Pa. 391, we held that where, on a partial distribution of an intestate's estate, one of the distributees does not appear, and the entire fund for distribution is awarded to those who do appear and make claim, the inequality will be corrected on a subsequent distribution of other funds belonging to the decedent's estate, by awarding to the one who received nothing on the first distribution, enough to make up his proportionate distributive share of both funds; if the second fund is insufficient to make him equal with the distributees of the first fund, the whole of the second fund will be awarded to him.    The rule is so manifestly just and equitable that it needs no vindication, and it is not necessary to repeat the reasoning of Mr. Justice GORDON in the opinion delivered by him in the last case.    The fact that the appellees, who are of the half blood, were omitted from the former distributions constitutes no reason why they should not have now what they would certainly have received then if they had had knowledge of the distributions and had participated in them. The ruling in Grim's Appeal was repeated in Grim's Estate, 147 Pa. 190.

The decree of the court below is affirmed at the cost of the appellants.