## Albertson's Estate. No. 2

148

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Albert L. Moise, Arthur E. Weil, Isaac S. Grossman,* and *Foulkrod, Sheppard, Porter & Alexander,* for exceptants.

*Harry B. Schultz* and *D. Arthur Magaziner,* contra.

STEARNE, J., January 8, 1937.—The exceptions relate to the construction of the will and the validity of an assignment of one of the distributees.

Testator erected a trust of his residuary estate. After the decease of his widow, the net income was bequeathed in designated unequal proportions to his five named children for their respective lives. Upon the death of each named child, the principal of such share was payable to "such of his (her) children as shall be then living". Contemplating the decease of any of his five named children "without leaving issue", testator directed that such shares should be paid into the trust, and held under all its terms, "for my surviving child or children".

Of testator's five named children, three subsequently died leaving surviving children: Amelia one, Emma four, and William one. But as to William, in addition to one surviving child, he left two grandchildren, children of a predeceased son. (This latter situation raises questions dealt with hereinafter.)

Subsequent to the death of three of the named children of testator leaving issue, two died without issue. Ella died in 1933 and Charles in 1934.

At the audit of the trustee's account, relating to the principal of the shares of Ella and Charles (testator's two children who died without leaving issue) it was contended that the words of the will limited participation to "surviving" children; that because, upon the death of Ella in 1933, Charles was the sole "surviving" child, thereafter both shares were held for the benefit of Charles for life; that, as Charles died in 1934, without issue, an intestacy occurred as of the date of Charles' death. The

auditing judge declined to accept this view. He awarded all the income accrued to Charles' death to his estate. As to principal, under Nass' Estate, 22 D. & C. 604, affirmed in 320 Pa. 380, the auditing judge awarded the fund to the grandchildren of testator, in the proportions fixed in the will relating to the original shares of the life tenants. On exceptions, the result reached by the auditing judge was affirmed by the court en banc, upon the theory that testator's testamentary scheme was clearly that of a family or stirpital distribution: Fox's Estate, 222 Pa. 108; Bacon's Estate, 202 Pa. 535; Vance's Estate, 209 Pa. 561; Gilmer's Estate, 17 Dist. R. 59; Waln's Estate (No. 2), 25 Dist. R. 607. Distribution was affirmed in sixths: one sixth to the surviving son of Amelia; two sixths to the four surviving children of Emma, and three sixths to Margaret Beitel, the surviving child of William. There is no dispute concerning this fractional division, because testator gave to his children who died leaving children the income on one tenth, two tenths, and three tenths, respectively.

No consideration was given by the auditing judge, or by the court en banc, to the claim to participate by Harry Albertson and Henrietta Wagner, children of Lewis, a son of William, one of the five named children of testator entitled to a life estate as to a three-tenths share. Lewis predeceased his father William. The entire principal of the three-sixths share, in which William had possessed a life estate, was awarded to his daughter, Margaret Beitel, on the ground that she was the sole "child then living". Accordingly, a decree was entered by the court en banc modifying its opinion and recommitting this question to the auditing judge for reconsideration.

The auditing judge, upon reconsideration, and with the facts and correct situation then before him, modified his original ruling. The will provided, upon the son's death, that the principal was payable to "such of his (William's) children as shall be then living." Not having had it called

to his attention, the auditing judge, at the first adjudication, overlooked the significance of testator's limitation over in the case of default of "issue". In the supplemental adjudication he correctly pointed out that while the term "children" does not ordinarily include grandchildren or other more remote descendants, yet a well-defined exception exists to this general rule where there is a limitation over in default of "issue". In the instant will there was a limitation over in default of issue, wherefore the exception, and not the general rule, applies. The auditing judge therefore ruled, and we concur in his ruling, that the word "children" must be given an enlarged construction, which clearly includes these grandchildren claimants. He cited Hallowell et al. v. Phipps et al., 2 Whart. 376; Hunt's Estate, 133 Pa. 260; Horwitz v. Norris, 49 Pa. 213; Towne's Estate, 260 Pa. 443.

In addition to the cases cited by the auditing judge we may add, in support of his conclusion, Campbell's Estate, 202 Pa. 459; Joyce's Estate, 273 Pa. 404; Lewis' Estate, 15 D. & C. 665, and Lewis' Estate, 30 Dist. R. 541; Alexander's Estate, 11 Berks 93. Counsel for Margaret Beitel relies largely upon McGlensey's Estate, 37 Pa. Superior Ct. 514 (1908). This case, the record discloses, was appealed from the common pleas court, and not from the orphans' court as the report states. It is true that it would appear impossible to distinguish this case from the present factual situation. If it were not for later Supreme Court pronouncements perhaps we would be bound thereby. However, in the later case of Walker's Estate, 240 Pa. 1 (1913), the Supreme Court, on almost identical facts, decided to the contrary, following the long line of cases hereinbefore cited. We are, therefore, bound by the decisions of the Supreme Court, and unanimously concur in the ruling of the auditing judge that William's grandchildren, in the present circumstances, participate in the present distribution.

But Margaret Beitel further resists participation by these grandchildren upon two grounds: (a) Res judicata;

(b) estoppel. The grandchildren deny that they are so excluded, but upon the contrary maintain that not only should they receive their distributive share from the present fund, but they should receive an additional amount in equalization of their true share, from which they were omitted in a prior adjudication.

Res judicata: This is the eighth account of the trustees. Our examination of the prior adjudications discloses that Judge Gest in the third account, Judge Gummey in the fourth account, and Judge Van Dusen in the fifth account, did say that Margaret Beitel, as "the child then living" of her father William was the sole remainderman in the principal of her father's share. However, until the present adjudication, the distributions of the shares of Ella and Charles were never before the court. These are entirely different funds, although emanating from another part of the trust under the will of testator. Judge Van Dusen awarded the principal of the share in which William had enjoyed a life estate exclusively to Margaret. This award in no manner related to the distribution of the present shares of Ella and Charles, who subsequently died without issue.

As noted above, our record discloses that the existence of grandchildren (being children of Margaret Beitel's brother Lewis, who predeceased the father) was never brought to Judge Van Dusen's attention, and they were not mentioned in the petition for distribution attached to the adjudication, and upon which it was predicated. Furthermore, the record discloses no notice to those grandchildren (one of whom was a minor for whom no guardian was appointed). Indeed, counsel for the accountant admitted in the present record that the grandchildren "did not have any notice" of the audit. Thus a situation presents itself where it is claimed that adjudications of prior accounts, of different funds, and where the present claimants were not made parties nor given notice, became the "law of the case".

Judge Gest's words in Handy's Estate, 314 Pa. 61, have particular application to the instant case:

"The record shows that Clara C. Handy, as administratrix of her husband, Edward S. Handy, Jr., was awarded the income accrued on her share. No question whatever was raised before the auditing judge. The adjudication followed literally the prayer of the petition and has been acquiesced in for twenty years. If any error was there made we are not bound to make another: Kellerman's Est., 242 Pa. 3."

Counsel relies upon Gould's Estate, 270 Pa. 535. There the party claimant was the fiduciary of a distributee who had, in her lifetime, participated in a distribution under a former adjudication of the same fund. Such fiduciary was properly denied the right to litigate the question again. As pointed out by Judge Rice in Kellerman's Estate 52 Pa. Superior Ct. 412, 421 (affirmed in 242 Pa. 3), the principle of the "law of the case" relates only "*to the conclusiveness of a final decree disposing of a fund in a particular way, in a subsequent controversy between the same parties, involving the same fund.*" (Italics ours.)

We are of opinion, in the circumstances of this case, that the question of law is not res judicata, and the grandchildren claimants are not foreclosed from participating.

Estoppel: The remaining basis for the resistance of Margaret Beitel against participation by the children of her deceased brother Lewis is the claim that they are estopped, upon the doctrine of election. Her counsel stated "that her [Margaret Beitel's] father who [was] the life tenant in this Albertson's estate, made a will in which he provided that one third of his estate should be given to these exceptants [grandchildren], and stated in his will that inasmuch as [Mrs. Beitel] was provided for under the will of the grandfather, he felt she should be omitted entirely from any benefits of his will". We shall treat this statement as an offer of proof which, in the re-adjudication, the auditing judge refused to consider.

The legal significance of the offer is that the acceptance by the grandchildren of the bequest in their grandfather's will was, at law, an election to abide by its terms, and consequently in equity they are precluded from accepting any benefits under this will.

We are of opinion that such contention is without merit. If the son of this testator undertook to construe the present will, and did so erroneously, certainly this is not such a mistake of fact as would revoke his own will: Prevost's Estate, 264 Pa. 27. In Prevost's Estate testator, because of "shrinking of investments", reduced legacies by a codicil. No shrinkage in fact occurred. The Supreme Court refused to restore the original amount of the legacies. Furthermore, Mrs. Beitel was "provided for" in the will of her grandfather; the contest here being merely the quantum of her interest. We may not surmise what may, or may not, have been in testator's mind.

But beyond this, as a matter of law, the doctrine of election is not applicable to the present facts: Bispham's Principles of Equity (9th ed.) 497, §295 states the rule:

"An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of, in favor of a third party, by virtue of the same paper."

The principles of equitable elections arise in cases where a testator bequeaths to a third person the property of another, and by the same instrument makes a gift to such other person. Under those circumstances the beneficiary cannot accept the terms of one part of the will and disclaim the other. He is put to an election: Preston v. Jones, 9 Pa. 456; Lewis v. Lewis, 33 Pa. 66; Cox et al. v. Rogers, 77 Pa. 160; Zimmerman v. Lebo, 151 Pa. 345; Cooley v. Houston, 229 Pa. 495.

In the instant case these grandchildren were placed under no duty of election. True, if the construction of the will by the court is correct, they possess an interest under

the great-grandfather's will. However, they are not estopped from now receiving it merely because their grandfather excluded his daughter from his own will upon the expressed reason that she was "provided for" under the will of the present testator. Mrs. Beitel, in fact, was provided for under this will. It is not for us to enter into the realm of conjecture as to what her father William may have regarded as the quantum of his daughter's interest under her grandfather's will, in short, the extent to which her grandfather "provided" for her.

If present claimants are not precluded from participating either because of res judicata or estoppel, the final problem is presented: May their shares be equalized in the present distribution? They did not receive their distributive share of the trust set up for the life of their grandfather William.

The facts upon our record disclose that these claimants were omitted from the petition for distribution. Their existence was never brought to the attention of the auditing judge. Counsel for the accountant admitted that they were not given notice. Counsel offered to prove that claimants did have notice of the audit. The auditing judge declined to hear testimony. In the face of this record, especially in view of the admission of counsel for accountant, it seems futile to send this record back for such testimony. It is obvious from the record itself that no consideration was given by Judge Van Dusen to the rights of these claimants.

But the auditing judge declined to consider the present question of equalization, upon the theory that this would require a review, after seven years, of Judge Van Dusen's adjudication. This we deem an erroneous view. There was no error in the adjudication itself. It was correct upon the facts presented to the auditing judge. Furthermore, distribution has long since been made, and after this lapse of time it could not be disturbed: Stetson's Estate, 305 Pa. 62.

In our view this is not a question for review, but the equalization of shares of omitted distributees. It has been a long-established principle that where a distributee has been omitted from a prior adjudication the inequality will be corrected in a subsequent distribution of other funds belonging to the same estate: Grim's Appeal, 109 Pa. 391; Yetter's Estate, 160 Pa. 506; Reed's Estate, 237 Pa. 125; Githens' Estate, 10 Dist. R. 375; Landmesser's Estate, 13 Pa. Superior Ct. 467; Hall's Estate, 25 Dist. R. 253.

We therefore modify the readjudication by directing that Henrietta Wagner and Harry Albertson, children of Lewis Albertson (deceased brother of Margaret Beitel) shall each be entitled to receive, in equalization of their shares, one fourth of $87,210, said sum of $87,210 having been so awarded and paid to said Margaret Beitel, to the exclusion of said Henrietta Wagner and Harry Albertson, under adjudication of Judge Van Dusen dated January 14, 1929.

Accountant is directed to prepare and submit to the auditing judge, for his approval, a schedule of distribution, in exact accordance with this opinion.

The final question for determination concerns the validity of an assignment of the interest of a distributee. When the case was first presented, it was recommitted to the auditing judge for further consideration because the court en banc was not satisfied concerning the nature of the alleged consideration. Upon reconsideration the auditing judge, upon additional testimony being adduced, found the consideration to be "fair". A finding of an auditing judge, affirmed by the court en banc, is equivalent to a verdict of a jury and will not be reversed except for manifest error.

A father, one of the distributees herein, by a written assignment under seal prepared by a reputable member of this bar, for a named consideration of one dollar, assigned his interest in this estate to a son. A judgment creditor of the father, who subsequently attached the in-

terest, contests the validity of the assignment. If the assignor was solvent at the time of the transfer, such assignment, by a deed, under seal, is unquestionably valid. The case, however, was argued upon the assumption that the assignor was insolvent at the time of such transfer. Our examination of this rather unsatisfactory record fails to disclose any admission, stipulation or proof of such insolvency. While the testimony appears to indicate insolvency, yet such fact may not be inferred. Proof of insolvency must be established by testimony, or stipulated by counsel.

But solvent, or insolvent, if the consideration is "fair" (see the Act of May 21, 1921, P. L. 1045), and the auditing judge so found, the transfer is valid: Jarvis v. Bell, 296 Pa. 568.

The consideration which the auditing judge held to be "fair" was: (1) Release by the son to the father relating to a liability of the father for a wrongful act committed by the father as trustee in the grandfather's estate; it concerned wrongful investments and devastavit of the estate's moneys to the loss of the son approximating $10,000; (2) cancellation of a loan of liberty bonds to the father by the son in the sum of $450; (3) assumption by the son of a $1,000 obligation due by the father to his sister, to which exchange of liability the sister testified she agreed.

All of this testimony was uncontradicted. The value of the interest transferred is approximately .$9,000. It is true that the liability of the assignor as trustee of his father's estate has not been judicially determined. Yet the father admitted his default to the son's injury.

Thus, if the assignor was solvent, there can be no question. If, however, the assignor was in fact insolvent (although not so proven on this record) the finding of the auditing judge that the consideration was "fair" is amply supported by the uncontradicted testimony and will not be disturbed.

The exceptions of Henrietta Wagner and Harry Albertson are sustained. All other exceptions are dismissed. The readjudication, as modified, and upon approval by the auditing judge of the schedule of distribution as herein directed, is confirmed absolutely.