## Whelen Estate

*George B. Ross*, for *Barnes, Dechert, Price, Myers & Rhoads*, for accountant.

*Ben W. Ingber*, for John Howard Whelen, legatee.

*Thomas S. Weary*, of *Duane, Morris & Heckscher*, for possible remaindermen.

*Arthur M. Cooper*, for Commonwealth.

LEFEVER, J., March 22, 1954.—Emily Whelen, who died November 1, 1929, by her will, inter alia, gave the sum of $15,000 to the accountant, in trust, to pay the net income therefrom to her niece, Charlotte Frazer, for life, and by codicil, dated July 14, 1920, inter alia, also gave a share of her residuary estate to the accountant, in trust, for the benefit of the niece, Charlotte Frazer, for life, and directed that upon the decease of Charlotte Frazer the $15,000 trust fund and residuary trust fund be equally divided among testatrix's nieces and nephews, by name, viz., Isabella H. Dolan, Agnes W. Duffus, Christine C. Whelen, John Howard Whelen, Persifor Frazer, and John Frazer. By a later codicil, dated September 25, 1922, testatrix, because of the death of Christine C. Whelen, niece, revoked the bequests which had been made for her benefit (as to which there is no dispute concerning the completeness and all embracing effect of such revocation). By still another later codicil, dated September 11, 1925, testatrix, "for the reason" that her nephew, Persifor Frazer, had died, proceeded to revoke certain bequests which she had made for his benefit (as to which there is a dispute as to the effect of such revocations and which will hereinafter be adverted to).

The funds accounted for relate to the above trusts

and were awarded to the present accountants by adjudication of Henderson, J., dated November 5, 1930, sur the audit of the executor's account. The funds of both trusts have been merged—apparently for the reason that Charlotte Frazer was the cestui que trust as to both trusts—it being stated that the $15,000 trust constitutes 51.44 per cent of the commingled fund (see statement of proposed distribution).

The account is filed because of the death of Charlotte Frazer, the life tenant, which occurred July 30, 1953, whereupon the trusts, the subject of the present accounting, wholly terminated.

Testatrix was survived by no issue.

Persifor Frazer, one of the nephews, died in the lifetime of testatrix (as noted by testatrix herself in the codicil aforementioned), leaving to survive him three children, Maria N. Dougherty, Isabel F. Bell and Persifor Frazer, 3rd, who are still living.

Agnes W. Duffus, one of the nieces, died November 29, 1933, leaving a will, which was duly probated, and whereby she gave one half of her estate to her son, Kenneth Sutherland Duffus, and the other one half in trust for the benefit of her husband, Francis Ferguson Duffus, until his death or remarriage, with remainder over (and the husband died December 1, 1953) to her son, Kenneth Sutherland Duffus.

Isabel H. Dolan, one of the nieces, died November 10, 1953, leaving a will, duly probated on November 13, 1953, by the Register of Wills of Delaware County, whereunder letters testamentary were granted to H. Hoffman Dolan, executor.

The nephews, John Howard Whelen and John Frazer, still survive.

The question presented for determination is whether testatrix revoked all provisions in her will and codicils with respect to bequests made to her nephew, Persifor Frazer, or merely revoked those items specifically

referred to in her codicil, dated September 11, 1925, with the consequence that under the antilapse provision of section 15(*b*) of the Wills Act of June 7, 1917, P. L. 403, the three children of Persifor Frazer are entitled to the unrevoked gifts as were made to him.

By her will and second and third codicils, testatrix made a total of nine provisions for Persifor Frazer. He subsequently died, and following his death testatrix wrote the codicil, dated September 11, 1925, which reads, as follows:

"I revoke the clauses in my Will where I say I leave $15,000 to my nephew Persifor Frazer my Father's gold watch, all silverware, jewelry, pictures, furniture, books and any other articles also the share of money which he would receive from my residuary estate for the reason that he has died. I direct my executor to pay the interest on the fifteen thousand dollars which I had left to Persifor Frazer to his wife Virginia K. Frazer during the term of her life at her death the $15,000 is to go to my residuary estate. I revoke the clause in my Will where I leave my portion of Pew 56 in the Church of the Holy Trinity to Persifor Frazer and to John Frazer because they did not care to keep it. I now give and bequeath to the corporation known as The Rector, Church Wardens and Vestrymen of The Church of the Holy Trinity my portion of three seats in the pew to be free forever as an endowed memorial to my Father Edward L. Whelen for the sum of $2000. . . ."

It may be discerned from the codicil, dated September 11, 1925, as above quoted, that testatrix specifically revoked five provisions, namely: (1) $15,000; (2) "My Father's gold watch"; (3) "all silverware, jewelry, pictures, furniture, books and any other articles"; (4) "the share of money which he would receive from my residuary estate," and (5) "my portion of Pew 56 in the Church of the Holy Trinity". There is no specific

reference to (1) Persifor's one-fifth share of the remainder of the principal of trust of $15,000 for Charlotte Frazer for life; (2) Persifor's one-fifth share of the remainder of the trust of a share of residue for Charlotte Frazer, for life, or (3) Persifor's one-sixth share in the $15,000 legacy (originally given Christine C. Whelen by the will but revoked, because of her death, by codicil dated September 26, 1922) bequeathed under that codicil, dated September 26, 1922. As to the latter legacy of $15,000 (originally given Christine), it should be here noted that by adjudication of Henderson, J., dated November 5, 1930, sur the audit of the executor's account, or at least pursuant to schedule of distribution thereon filed and approved December 13, 1930, the $15,000 was awarded or distributed, as follows: $3,000, each, to John Howard Whelen, Mrs. Isabel H. Dolan, John Frazer, Miss Charlotte Frazer and Mrs. Agnes W. Duffus. Thus the three children of Persifor Frazer, deceased, were excluded from sharing in the $15,000 legacy. At the present audit, it was conceded that the three children of Persifor Frazer, deceased, had never received any notice of the audit of the executor's account in 1930, nor notice of any question relating to the effect of testatrix's revocation of bequests made to her nephew, Persifor Frazer.

"The established rule is that a codicil shall not be construed to disturb or change the dispositions of a will further than is necessary to give effect to the provisions of the codicil. As we said in *Dutton's Estate*, 301 Pa. 94, 97: '. . . The clear provisions of a will are only affected by a codicil to the extent absolutely necessary to give effect to the codicil.' See Reichard's Appeal, 116 Pa. 232; Schattenberg's Estate, 269 Pa. 90; Vernier's Estate, 282 Pa. 194; Baugh's Estate, 288 Pa. 308; Rainear's Estate, 304 Pa. 539; Frechie's Estate, 62 Pa. Superior Ct. 48.": Chauncey's Estate, 335 Pa. 73, 76 (1939).

Had testatrix intended to revoke all the provisions for Persifor Frazer, the simple and logical thing for her to have done would have been to say, "I revoke all provisions in my will and codicils for Persifor Frazer." Testatrix did this precise thing in the third codicil, viz.:

"Christine C. Whelen having died after my Will was made I revoke all money, pictures, rings, silver, jewelry and other articles which by division she would have received from my Estate."

Since testatrix knew how to write a broad, all-inclusive revocation, and since she did not use such language with regard to Persifor Frazer, she must be held to have intended *not* to revoke all provisions for him but only those provisions which she specifically enumerated.

If testatrix wanted to make some adjustment in her bequests because of Persifor Frazer's death, that is, to eliminate some of them but to preserve others for his children, she could have accomplished this in two ways: (1) By specifically revoking certain items and specifically bequeathing and devising the other items to Persifor Frazer's children; (2) to have done exactly what she did, namely, to enumerate the bequests which she wished revoked. The first would have been the lawyerlike way. But this codicil was apparently holographic. However, it would do injustice to the intention appearing from the actual language of the codicil to hold that the second method was not as efficacious in law as the first. The well-known doctrine, inclusio unius est exclusio alterius, is applicable. Testatrix specifically referred to certain items which she revoked. A fortiori, she did not revoke the provisions not mentioned.

It should be noted that Mr. Frazer's three children will be the beneficiaries of the unrevoked items in testatrix's will and codicils. She is presumed to have

known the law that his children are entitled to take the unrevoked gifts. It is at least reasonable to believe that she intended them to benefit therein.

It is to be noted that Acelie Whelen and Christine Whelen, who also predeceased testatrix, did not have children. This may explain why there is sweeping revocation as to their gifts, and revocations as to only specific items with regard to bequests to Persifor Frazer. As Judge Penrose said in Page's Estate, affirmed on his opinion in 227 Pa. 288, 289 (1910), " '. . . where a testator uses a different word or phrase it will be presumed to have a different meaning' ".

To hold that testatrix's statement in the questioned codicil "for the reason that he has died" demonstrated an intention upon her part to revoke all provisions in the will and codicils for him, would amount to speculation as to her intention. It is well settled that the court may not do this.

" 'Conjecture is not permitted to supply what the testator has failed to indicate . . . The question is confined to the meaning of what the testator has said, and does not extend to the consideration of what he might have said but did not' . . .": Jacobs Estate, 343 Pa. 387, 394 (1941).

"It will not do for the courts to undertake to guess at the intention of a testator and declare that to be his will. If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will." Grothe's Estate, 229 Pa. 186, 192 (1910).

"Justice Oliver Wendell Holmes, in Eaton v. Brown, 193 U. S. 411, said, p. 413: 'The English Courts are especially and wisely careful not *to substitute a lively imagination* for what a testator might have said but did not. This court has rigidly adhered to this rule.' ": Morrison Will, 361 Pa. 419, 421 (1949). It follows, and I hereby rule, that testatrix did not revoke the un-

mentioned items, but only those items which were specifically mentioned in the codicil in dispute.

This leads to a consideration of the meaning of the words in the questioned codicil:

"I revoke the clause in my will where I say I leave . . . also the share of money which he would receive from my residuary estate . . ."

The provision with regard to the disposition of testatrix's residuary estate is as follows:

"All the rest residue and remainder of my estate I give, bequeath and devise to my nieces and nephews here mentioned Isabel H. Dolan, Agnes W. Duffus, Christine C. Whelen, Persifor Frazer, John Frazer, John Howard Whelen. I instruct my executor to pay the income of the equal share of this amount to Charlotte Frazer during her life upon her decease to divide the principal between my nieces and nephews here mentioned, Isabel H. Dolan, Agnes W. Duffus, Christine C. Whelen, John Howard Whelen, Persifor Frazer, John Frazer."

It appears that Persifor Frazer was entitled to: (1) An outright undivided equal share of the residuary estate upon testatrix's death, and (2) an undivided equal share of principal in remainder of the share of the residue given in trust for life to Charlotte Frazer. Both of these interests are in the residuary estate. The first share is due on testatrix's death. The second share is payable upon the death of Charlotte Frazer, life tenant. Although the intent of testatrix is not free from doubt, it seems to me that a reasonable construction of the language, "the share of money which he would receive from my residuary estate", includes his interest in the residuary estate both as a direct beneficiary and as a remainderman of the trust for Charlotte Frazer. I so rule. It follows that the children of Persifor Frazer are not entitled to share in the residuary estate either directly or in the remainder

of the trust of a share of the residuary estate for Charlotte Frazer.

On the other hand, Persifor Frazer's children are entitled to receive his share in the remainder of the trust for Charlotte Frazer in the amount of $15,000 created by testatrix's third codicil. This is because that trust was not specifically mentioned in the revoking codicil at issue. Awards will be so made.

Following the same line of reasoning, the children of Persifor Frazer were entitled to a one-sixth share of the $15,000 legacy (originally given Christine C. Whelen) which testatrix directed, by codicil dated September 26, 1922, be divided "equally among my nieces and nephews of the following names . . . Persifor Frazer . . ." since the disputed codicil, dated September 11, 1925, did not specifically revoke that gift.

As pointed out above, in his adjudication Judge Henderson treated this gift to Persifor Frazer as revoked and awarded the fund to the other five nephews and nieces. However, no notice of the account and audit was given to the children of Persifor Frazer. The same nephews and nieces (or their issue or heirs), except and excluding, however, Charlotte Frazer, are entitled to the funds now before me and received a one-fifth share of the $15,000 legacy (Christine's revoked legacy) under the adjudication of Judge Henderson. It is well settled that in such circumstances this court has the power to, and should, equalize the participation of all parties in the $15,000 bequest: Albertson's Estate, 329 Pa. 372 (1938), Reed's Estate, 237 Pa. 125 (1912) ; Yetter's Estate, 160 Pa. 506 (1894) ; see Edward Estate, 360 Pa. 504 (1948). This can be accomplished by adding to the total share which the three children of Persifor Frazer would receive out of the funds presently before the court, an additional amount equal to one sixth of the fund of

$15,000, namely, $2,500, less, however, $500 which was overpaid to Charlotte, a net sum of $2,000 and thus by deducting $500 from each share so awardable to the other nephews and nieces. No interest on this fund is claimed, nor will be allowed. Such equalization is directed and awards will be made accordingly.

It is noted in the statement of proposed distribution that by writing, dated November 19, 1953, John Howard Whelen assigned up to $3,000 of his distributive share to the Pennsylvania Company for Banking and Trusts as security for loans from that company.

It is further noted that Charlotte Frazer, the deceased life tenant, died owning gross assets, including accrued income from this trust of less than $500 and that her estate was settled and ordered distributed pursuant to petition under section 202 of the Fiduciaries' Act of 1949, by decree of this court (no. 3573 of 1953), dated December 18, 1953, her entire estate, subject to payment of counsel fee and such inheritance tax as may be due, having been awarded to Academy of Assumption. The award of undistributed income to July 30, 1953 (date of her death), to which her estate is entitled in the instant trust, will accordingly be awarded in pursuance of the decree of December 18, 1953, above referred to.

Accordingly, of the balance as shown by the account, principal, $18,917.83, composed as therein set forth, less costs of filing account, and less additional costs, $4.63: 51.44% thereof (representing the interest of the $15,000 trust in the commingled fund accounted for and as to which trust the remainder interest of Persifor Frazer was not revoked), is awarded, as follows: One fifth (less $500) to H. Hoffman Dolan, executor of will of Isabel H. Dolan, deceased; one fifth (less $500) to John Howard Whelen, subject to his assignment hereinabove mentioned; one fifth (less $500) to John Frazer; one fifth (less $500) to Kenneth Sutherland Duffus, subject to such inheritance tax as

may be due in estate of Agnes W. Duffus, and one fifth, plus the $2,000 deducted and charged to prior four-fifth shares, equally among Marion Frazer Dougherty, Persifor Frazer, 3rd, and Isabel Frazer Bell (the three children of Persifor Frazer, deceased nephew); and what remains (representing the interest of the trust of share of residue for Charlotte Frazer, life tenant (now deceased) and as to which the remainder interest of Persifor Frazer was revoked), is awarded: One fourth thereof, each, to H. Hoffman Dolan, executor of will of Isabel H. Dolan, deceased, John Howard Whelen (subject to his assignment), John Frazer and Kenneth Sutherland Duffus (the latter's share subject to such tax as may be due in estate of Agnes W. Duffus).

Payment and distribution is so decreed with leave to make any and all necessary assignments and transfers.

The balance, income, $1,851.70, less distribution made to Charlotte Frazer, life tenant, aggregating $1,807.75, as shown by the account, leaving $43.95, with any additional collections to time of actual distribution, is awarded, so that the undistributed accrued income due estate of Charlotte Frazer, deceased, passes pursuant to decree of the court, dated December 18, 1953 (no. 3573 of 1953) to Academy of Assumption, subject to payment of transfer inheritance tax as may be due; and the rest to and among the parties to whom the principal is above awarded and in the same proportions as indicated. Payment is so decreed.

Accountant will submit a schedule of distribution, in duplicate, certified by counsel to be correct and in conformity with this adjudication, which schedule, when and if approved by the auditing judge, will be annexed hereto and form part hereof.

And now, to wit, March 22, 1954, the account is confirmed nisi.